Walter Allen ROTHGERY, Plaintiff,

v.

GILLESPIE COUNTY, TEXAS,
Defendant.

No. A–04–CA–456LY.

United States District Court,
W.D. Texas,
Austin Division.

Feb. 2, 2006.

William Christian, Graves, Dougherty, Hearon & Moody, Andrea M. Marsh, Director, Texas Fair Defense Project, Austin, TX, for Walter Allen Rothgery, Plaintiff.

Charles Straith Frigerio, Attorney at Law, San Antonio, Hector Xavier Saenz, Law Ofcs. Of Chas. S Frigerio, for Gillespie County, TX, Defendant.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

YEAKEL, District Judge.

Before the Court are Defendant Gillespie County's Motion for Summary Judg-

ment filed July 18, 2005 (Doc. # 28); Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment filed August 8, 2005 (Doc. # 32); Plaintiff's Appendix of Summary Judgement Evidence filed August 8, 2005 (Doc. # 33); and Defendant Gillespie County's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment filed August 19, 2005 (Doc. # 29). The Court heard argument on the motion on November 18, 2005. Having considered the motion, response, and reply, as well as argument of counsel, summary-judgment proof presented, and applicable case law, the Court will grant the summary-judgment motion for the following reasons.

### I. Background

On July 15, 2002, officers of the Fredericksburg, Texas Police Department arrested Plaintiff Walter Allen Rothgery without a warrant for unlawfully carrying a firearm by a felon, a third-degree felony under Texas law.[1] Rothgery was taken to the Gillespie County jail for booking. Rothgery states he requested, in writing, appointment of counsel, because he could not afford to hire an attorney to defend him. This written request is not a part of the summary-judgment proof submitted to this Court.

The next morning, July 16, 2002, Rothgery appeared before Judge Carl Schoessow, Justice of the Peace, Precinct # 2, Gillespie County.[2] At that time, Judge Schoessow presented Rothgery with a form "Warning by Magistrate (Setting

---

1. At the summary-judgment stage, this Court is required to believe the evidence of the nonmovant and to draw all justifiable inferences in the nonmovant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court's factual recitation, therefore, reflects Rothgery's version of the facts.

2. Because Rothgery was arrested without a warrant, Texas law requires that he be presented to a magistrate within forty-eight hours of his arrest. *See* TEX CODE CRIM. PROC.

Bail & Right to Attorney) State of Texas, County of Gillespie," which Rothgery submitted as part of his summary-judgment proof. The form reflects that Judge Schoessow informed Rothgery that Rothgery was accused of the criminal offense of unlawful possession of a firearm by a felon, but that formal charges had not yet been filed against Rothgery, and that Judge Schoessow set Rothgery's bond at $5,000. Additionally, the form reflects that Judge Schoessow informed Rothgery of his right to appointed counsel, if Rothgery could not afford counsel, and that Rothgery waived his right to counsel "at that time." [3]

As part of his summary-judgment proof, Rothgery also submitted the Affidavit of Probable Cause sworn to by the arresting officer on July 15, 2002. This affidavit purports to set forth facts personally observed by the arresting officer regarding Rothgery's actions on July 15, 2002, and charges that Rothgery committed the offense of unlawful possession of a firearm

by a felon, a third degree felony. *See* TEX. PENAL CODE ANN. § 46.04 (West Supp. 2005).[4] The affidavit further reflects that on July 16, 2002, Judge Schoessow examined the affidavit and determined that probable cause existed for the arrest of Rothgery.

After Rothgery posted bail, he continued to inquire about the status of his July 15, 2002 request for appointment of counsel. After county employees informed him that they could not locate his July 15, 2002 request for counsel, Rothgery completed a second written request for appointment of counsel on July 24, 2002. Rothgery caused the request to be notarized and submitted to jail employees. No attorney was appointed for him based on the July 24, 2002 request.

As is true of the July 15, 2002 request, this second request is not a part of the summary-judgment proof before this Court. Rothgery's summary-judgment

---

ANN. art. 14.06(a) (West Supp.2005). Presentation to the magistrate is required, in part, so that the magistrate can inform a person arrested of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, of his right to have an examining trial, and of his right to request the appointment of counsel if the person cannot afford counsel. *See* TEX CODE CRIM. PROC. ANN. art. 15.17(a) (West Supp.2005). The magistrate is further required to inform the person arrested of the procedures for requesting appointment of counsel and that he is not required to make a statement and that any statement made by him may be used against him. *See id.* These sections of the Texas Code of Criminal Procedure were amended after Rothgery's arrest. Because the amendments did not materially alter the sections as they existed then, the current versions are cited for simplicity.

3. The phrase "at that time" is underlined on the form. Rothgery testified in his deposition that this phrase was underlined because, when Rothgery asked Judge Schoessow about the status of his July 15, 2002 request for appointment of counsel. Judge Schoessow said that Rothgery would have to waive his right to an attorney for purposes of the July 16, 2002 appearance, if Rothgery wanted to have bail set at that time. According to Rothgery, Judge Schoessow told him that he would have to wait in jail until an appointment was made, if Rothgery wanted an attorney appointed for the bail determination. Rothgery further testified that he agreed to waive his right to counsel for purposes of that proceeding only based upon Judge Schoessow's statements, and that Judge Schoessow underlined the phrase "at that time" to reflect this limited waiver.

4. This section of the Texas Penal Code was amended after Rothgery's arrest. Because the amendment did not materially alter the section as it existed then, the current version is cited for simplicity.

proof does include the notary log of Barbara Crenwegle, the administrative assistant to the Gillespie County Judge and Commissioners. Crenwegle's notary log reflects that Crenwegle notarized a request for appointment of an attorney and an affidavit in support of an application for appointment of an attorney on July 24, 2002, for "Walter A. Rothgery."

From July 2002 until January 2003, Rothgery claims that he repeatedly contacted employees of Gillespie County to inquire about the status of his appointment of counsel. Rothgery testified in his deposition that he was consistently told that no appointment had been made.

On January 17, 2003, six months after Rothgery's arrest, a Gillespie County grand jury returned an indictment against Rothgery for the state felony offense of unlawfully carrying a firearm by a felon. Rothgery's bond was increased to $15,000, and he was rearrested on January 18, 2003. Rothgery was again brought before Judge Schoessow on January 19, 2003.[5] When he appeared before Judge Schoessow, Rothgery inquired about the status of his last request for appointment of counsel, the July 24, 2002 written request. Rothgery states that Judge Schoessow speculated that Rothgery had not been appointed an attorney because he "didn't deserve one." Rothgery further testified in his deposition that, as of January 19, 2003, there was no record of his submitting the previous two requests for appointment of counsel. Rothgery claims that he submitted a third form requesting counsel on January 19, 2003. Like the others, this request is not in the summary-judgment record before this Court.

Three days later, and still with no appointed attorney, Rothgery was transferred to the Comanche County jail due to overcrowding in the Gillespie County jail. Rothgery asked Comanche County jail employees about the status of his request for appointment of counsel, and was told that they knew nothing of such request. On January 23, 2003, Rothgery completed a fourth written request, and employees at the Comanche County jail faxed the request to Gillespie County. Based on this request, State District Judge Stephen Ables immediately appointed counsel to represent Rothgery. The January 23, 2003 request is part of the summary-judgment record in this case.

Rothgery's appointed counsel expeditiously obtained records concerning the alleged underlying offense, which reflected that Rothgery was not a convicted felon. On that basis, the Gillespie County District Attorney moved to dismiss the indictment. Judge Ables granted the motion and dismissed the indictment against Rothgery on April 30, 2003.

On July 15, 2004, Rothgery filed this action under Title 42, United States Code, Section 1983, the federal Civil Rights Act, against Gillespie County. See 42 U.S.C. § 1983. Rothgery alleges that Gillespie County's policies or customs regarding appointment of counsel for indigent defendants violate the Sixth and Fourteenth Amendments to the United States Constitution. Rothgery does not, however, complain about Gillespie County's written policies and procedures concerning appointment of counsel for indigent defendants. Rather, Rothgery complains about unwritten policies and cus-

---

**5.** Rothgery testified in his deposition that he thought he appeared before Judge Schoessow on January 19, 2003, but that he was unsure. As part of its summary-judgment proof, Gillespie County submitted the second "Warning by Magistrate (Setting Bail & Right to Attorney) State of Texas, County of Gillespie" form issued to Rothgery, and this form reflects that Rothgery appeared before Judge Schoessow on January 19, 2003.

toms concerning appointment of counsel for indigent defendants that he alleges both the county and state courts follow in Gillespie County.[6]

Specifically, Rothgery alleges that Gillespie County follows a policy, practice, and custom that denies access to appointed counsel to a person charged with a felony, if that person is released from jail on bond, regardless of the person's financial status. Alternatively, Rothgery alleges that Gillespie County follows a policy, practice, and custom that denies access to appointed counsel to a person charged with a felony, but not yet indicted, if that person is out of custody on bond at the time of his request for counsel, regardless of the person's financial status. Rothgery further alleges that Gillespie County follows a policy, practice, and custom that involves failure to adequately train, supervise, and monitor county employees to whom the responsibility for preliminary processing of requests for appointed counsel has been delegated; thus creating an unreasonable risk that applications for appointed counsel will not be recorded and will not be ruled upon in a timely manner. Lastly, Rothgery alleges that Gillespie County follows a policy, practice, and custom that involves failure to adequately monitor appointed counsel, creating an unreasonable risk that attorneys appointed to represent indigent criminal defendants will not promptly contact those defendants, thereby denying meaningful access to counsel. Seeking monetary damages against Gillespie County, Rothgery claims these policies and customs injured him because, had be been timely appointed counsel in July 2002, the charges against him would have been resolved before he was indicted, rearrested,

incarcerated, and subjected to increased bail in January 2003.

Gillespie County moves for summary judgment on Rothgery's entire action, arguing that there is no constitutional duty to appoint counsel prior to the initiation of adversary judicial proceedings. Gillespie County contends that the July 16, 2002 appearance before Judge Schoessow was not an adversary judicial proceeding because an appearance before a magistrate for statutory warnings does not involve counsel for the state and does not constitute a formal charge. Gillespie County argues that adversary judicial proceedings, sufficient to trigger Rothgery's Sixth Amendment right to counsel, were not initiated until after Rothgery was indicted and he made his first post-indictment court appearance. Thus, Gillespie County argues that the failure to appoint counsel for Rothgery from July 16, 2002, through January 23, 2003, did not violate Rothgery's Sixth Amendment right to counsel.

To the contrary, Rothgery argues that adversary proceedings were initiated against him on July 16, 2002, when he was charged by criminal complaint under Texas law. Rothgery contends that formal charges were filed against him under Texas law on July 16, 2002, when the arresting officer presented Judge Schoessow with the probable-cause affidavit. Gillespie County replies that no adversary judicial proceedings had begun on July 16, 2002, because the probable-cause affidavit is not a felony complaint under Texas law, and, even if it were, a felony complaint may be insufficient to trigger to the Sixth Amendment right to appointed counsel.

---

**6.** As part of his summary-judgment proof, Rothgery submitted Gillespie County's written policies, "Gillespie County Plan and Standing Rules and Order for Procedures for Timely and Fair Appointment of Counsel for Indigent Accused Persons in Gillespie County, Texas." Since these written policies are not at issue in this action, this Court expresses no opinion of them.

As discussed fully below, this Court concludes that neither the presentation of the probable-cause affidavit to Judge Schoessow nor Rothgery's appearance before Judge Schoessow on July 16, 2002, initiated adversary judicial proceedings against Rothgery. Thus, Rothgery's Sixth Amendment right to counsel did not attach on July 16, 2002, and Gillespie County did not violate Rothgery's Sixth and Fourteenth Amendment rights by failing to appoint counsel from July 16, 2002, through January 23, 2003.[7]

## II. Summary–Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *See Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing

---

7. Gillespie County also moves for summary judgment on the grounds that it has no duty to appoint counsel or to establish plans or procedures for appointing counsel. Because the resolution of the Sixth Amendment issue is determinative of the entire action, this Court need not address Gillespie County's other grounds for summary judgment. Likewise, because the Court determines that Rothgery's Sixth Amendment right to counsel

did not attach on July 16, 2002, the Court need not address Rothgery's allegations in his complaint that Gillespie County follows a policy, practice, and custom that involves failure to adequately train, supervise, and monitor county employees to whom the responsibility for preliminary processing of requests for appointed counsel has been delegated and failure to adequately monitor appointed counsel.

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Analysis

■ In pertinent part, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The purpose of the Sixth Amendment is to protect "the unaided layman at critical confrontations with his adversary." *U.S. v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). The Sixth Amendment right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant. *See Gouveia*, 467 U.S. at 187, 104 S.Ct. 2292; *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The initiation of adversary judicial criminal proceedings may be by way of formal charge, preliminary hearing, indictment, information, or arraignment. *See Kirby*, 406 U.S. at 689, 92 S.Ct. 1877. Federal courts look to state law in evaluating whether adversary judicial proceedings have been initiated. *See Moore v. Illinois*, 434 U.S. 220, 228, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).

■ The Texas Court of Criminal Appeals has not set forth a "bright-line rule" to determine when adversary judicial proceedings begin. *See Hidalgo v. State*, 983 S.W.2d 746, 752 (Tex.Crim.App.1999). In fact, the "caselaw is somewhat indeterminate on the question of what events may serve to initiate adversary judicial proceedings for Sixth Amendment purposes." *Green v. State*, 872 S.W.2d 717, 720 (Tex. Crim.App.1994). Rather than following a

bright-line rule as to when adversary judicial proceedings have begun, Texas courts focus on whether a particular event is a critical stage to which a person's Sixth Amendment right to counsel attaches. *See Hidalgo*, 983 S.W.2d at 752. Generally, Texas courts consider whether "the accused requires aid in coping with legal problems or assistance in meeting his adversary" in determining if an event is a critical stage. *Id.* Although this Court is bound by Texas courts' interpretation of the law governing its proceedings, this Court is not bound by the opinions of Texas courts concerning what constitutes a critical stage of prosecution under the Sixth Amendment. *See Coleman v. Alabama*, 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (rejecting Alabama Court of Appeal's conclusion that preliminary hearing was not critical stage).

■ The first issue before the Court is whether formal charges were filed against Rothgery on July 16, 2002, that initiated adversary judicial proceedings against him under *Kirby*. Rothgery contends that formal charges were filed against him when the arresting officer presented his Affidavit of Probable Cause to Judge Schoessow.[8] Rothgery argues that the probable-cause affidavit is a complaint under Texas law that initiated adversary judicial proceedings against him.

To support his contention, Rothgery relies on Article 15.04 of the Texas Code of Criminal Procedure, which states that "the affidavit made before the magistrate or district or county attorney is called a 'complaint' if it charges the commission of an offense." TEX. CODE CRIM. PROC. ANN. art. 15.04 (West 2005). Article 15.04 is found in the chapter of the Texas Code of Criminal Procedure titled "Arrest Under War-

---

**8.** It is undisputed that Rothgery had not yet been indicted or charged by information on July 16, 2002. Further, no party suggests that Rothgery was presented for arraignment before Judge Schoessow on July 16, 2002.

rant." *See* TEX. CODE CRIM. PROC. Arts. 15.01–15.27 (West 2005 & West Supp. 2005). It is undisputed, however, that Rothgery was arrested without a warrant on July 15, 2002.[9] Although there is little case law on the issue, it appears that Texas courts have construed Article 15.04 as applying only to affidavits made in support of arrest warrants. For instance, in *Huynh v. State*, 901 S.W.2d 480, 481 n. 3 (Tex.Crim.App.1995), the court explained that "[a] complaint is a sworn affidavit charging the commission of an offense and serves as the basis for an arrest warrant." Judge Meyers noted in his concurrence in *Green* that

> [i]t is well to remember in this context that the word "complaint" has come to mean at least two different things under Texas law. First, it describes a sworn affidavit upon the basis of which a magistrate may issue a warrant of arrest. Tex.Code Crim. Proc. Ann. arts. 15.03(a) 2, 15.04, 15.05. In this sense, it does not refer to a criminal pleading. *Wooldridge v. State*, 653 S.W.2d 811, 814 n. 6 (Tex.Crim.App.1983).

*Green*, 872 S.W.2d at 731 n. 5 (Meyers, J., concurring). Likewise, one Texas court has explained that an "affidavit supporting an arrest warrant is called a complaint." *Weems v. State*, 167 S.W.3d 350, 355 (Tex. App.—Houston [14th Dist.] 2005, pet ref'd.). Echoing Judge Meyers's statement in his *Green* concurrence, the same court has explained that "[t]he Code of Criminal Procedure uses the term 'complaint' to refer to both the affidavit supporting an application for an arrest warrant and the written document alleging an offense that it sworn to before a prosecutor." *Merritt v. State*, 76 S.W.3d 632, 633 n. 1 (Tex.App.—Houston [14th Dist.] 2002, no pet.) citing TEX. CODE CRIM. PROC. ANN. arts 2.04, 15.04 (West 2005).

No court, however, has expressly held that Article 15.04 applies only to affidavits given in support of arrest warrants. At the same time, the Court has found no case holding, or even discussing the possibility, that Article 15.04 applies to affidavits given in support of a probable-cause determination following a warrantless arrest. Rothgery relies on *Nehman v. State*, 721 S.W.2d 319 (Tex.Crim.App.1986) in support of his argument that formal charges were filed against him on July 16, 2002. The *Nehman* court concluded that adversary judicial proceedings had been initiated by the time the accused's Article 15.17 warnings [10] were given and held the accused's confession inadmissible. *See id.* at 322–23. The *Nehman* court stated that "formal judicial proceedings had been initiated by the time of appellant's Art. 15.17 'warning hearing.'" *Id.* at 323 n. 2. Although the *Nehman* court did not elaborate further on how the "formal judicial proceedings" had been initiated, the opinion reflects that a warrant for appellant's arrest had been issued and that appellant had been advised of his rights under *Miranda v. Arizona*,[11] including his right to counsel, before the Article 15.17 warnings were given. *See id.* at 320. Because Rothgery was not arrested pursuant to a warrant, the Court finds *Nehman* distinguishable. The Court concludes that Article 15.04 is inapplicable to the facts of this case.

Additionally, the Texas Court of Criminal Appeals has observed that Texas law

---

9. Chapter 14 of the Texas Code of Criminal Procedure, titled "Arrest Without Warrant," governs warrantless arrests. *See* TEX. CODE CRIM. PROC. ANN. arts. 14.01–14.06 (West 2005 & West. Supp.2005).

10. *See supra* note 2.

11. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

requires prompt probable-cause determinations for individuals arrested without a warrant to satisfy the Fourth Amendment. *See Green,* 872 S.W.2d at 721. Specifically, the *Green* court explained that "[b]ecause appellant was arrested without a warrant, it was necessary under the Fourth Amendment for the State promptly to obtain a probable cause determination 'as a condition of any significant pretrial restraint of liberty.'" *Id.* citing *Gerstein v. Pugh,* 420 U.S. 103, 125, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). It thus appears to this Court that, under Texas law, the purpose of presenting the probable-cause affidavit to Judge Schoessow on July 16, 2002, was to establish that probable cause existed under the Fourth Amendment for arresting Rothgery without a warrant, not to formally charge him with an offense under Texas law or *Kirby.*

Following Texas jurisprudence, the Court concludes that Article 15.04 does not apply to the probable-cause affidavit presented to Judge Schoessow in support of Rothgery's warrantless arrest. The Court further concludes that the probable-cause affidavit presented to Judge Schoessow on July 16, 2002, is not a complaint under Texas law formally charging Rothgery with an offense under *Kirby.* Since no formal charges were filed against Rothgery on July 16, 2002, adversary judicial proceedings were not initiated against him at that time, and his Sixth Amendment right to counsel did not attach.

■ In light of this Court's determination that no formal charges had been filed against Rothgery with the presentation of the probable-cause affidavit to Judge Schoessow, the Court agrees with Gillespie County that Rothgery's appearance before Judge Schoessow on July 16, 2002, did not initiate adversary judicial proceedings under Texas law. On July 16, 2002, pursuant to Article 15.17(a), Judge Schoessow advised Rothgery of his rights, informed him of the crime accused, advised him of the right and procedures for obtaining counsel, determined probable existed for his detention and set bond. *See* TEX CODE CRIM. PROC. ANN. art. 15.17(a). The Texas Court of Criminal Appeals has held that the giving of Article 15.17 warnings does not initiate adversary judicial proceedings. *Wyatt v. State,* 566 S.W.2d 597, 600 (Tex.Crim. App.1978). The *Wyatt* court stated that "[i]t is clear that the form signed and relied upon by appellant is simply an acknowledgment that a magistrate's warning was given pursuant to Article 15.17 . . . . We cannot conclude that informing the defendant of the accusation against him constitutes the initiation of adversary criminal procedures." *Id.* Further, the *Green* court observed that "[o]ther than its Article 15.17 aspect, the PIA [preliminary initial appearance], *per se,* is not a requirement of state law." *Green,* 872 S.W.2d at 722. The *Green* court explained that nothing that occurred at the defendant's preliminary initial appearance "required the aid of counsel to cope with any legal problem or assist in meeting the prosecutorial adversary." *Id.* at 721.[12] Additionally, the *Green* court stated, in *dicta,* that the possibility that an attorney could contest bail "does not convert the PIA [preliminary initial appearance] into a critical stage."

---

12. In *Green,* the defendant was arrested without a warrant, charged by felony complaint the day after his arrest, and subsequently presented to a magistrate pursuant to Article 15.17. Despite the State's invitation, the Texas Court of Criminal Appeals declined to hold that adversary judicial proceedings can only be initiated in a felony prosecution by the filing of an indictment. *See Green,* 872 S.W.2d at 720. Rather, the court held that an appearance before a magistrate under Article 15.17 and a probable-cause determination, following a warrantless arrest, is not a critical stage, even if adversary judicial proceedings have been initiated. *See id.*

*Green,* 872 S.W.2d at 722. Although not bound by the state court's critical-stage determination, the Court is persuaded that the determination is reflective of the Texas Court of Criminal Appeals' view that adversary judicial proceedings are not initiated by an appearance before a magistrate for Article 15.17 warnings and the setting of bail.

The Court concludes that no adversary judicial proceedings were initiated against Rothgery under Texas law on July 16, 2002, when Rothgery appeared before Judge Schoessow. Gillespie County is correct that Rothgery's Sixth Amendment right to counsel did not attach at that time.

This Court's holding that neither the presentation of the probable-cause affidavit to Judge Schoessow or Rothgery's appearance before Judge Schoessow on July 16, 2002 initiated adversary judicial proceedings against Rothgery under Texas law is consistent with Supreme Court and Fifth Circuit precedent. The Supreme Court has repeatedly stated that "the initiation of judicial criminal proceedings is far from a mere formalism." *Kirby,* 406 U.S. at 689, 92 S.Ct. 1877. Rather, the initiation of judicial criminal proceedings

> is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable.

*Id.* at 689–90, 92 S.Ct. 1877.

Although the Supreme Court has extended the Sixth Amendment's right to counsel to certain "critical stages" of criminal proceedings, it has done so in limited circumstances. *See Gouveia,* 467 U.S. at 189, 104 S.Ct. 2292. In the narrow instances where the Supreme Court has recognized that an accused Sixth's Amendment right attaches at a pretrial proceeding,

> the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both, *United States v. Ash, supra,* 413 U.S. at 310, 93 S.Ct. at 2574, in a situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade,* supra, 388 U.S. at 224, 87 S.Ct. at 1930.

*Gouveia,* 467 U.S. at 188–89, 104 S.Ct. 2292. Accordingly, the Sixth Amendment right to counsel can attach at pre-indictment preliminary hearings, if an accused is confronted with prosecutorial forces and witnesses against him. *See Coleman,* 399 U.S. at 10, 90 S.Ct. 1999. In such instances, "the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution." *Id.* at 9, 90 S.Ct. 1999.

The Fifth Circuit has held that an adversary criminal proceeding has not begun where the prosecution officers are unaware of either the charges or the arrest. *See McGee v. Estelle,* 625 F.2d 1206, 1208 (5th Cir.1980). The Fifth Circuit reasoned that an appearance before a magistrate for statutory warnings does not trigger the adversary process under Texas law because it does not involve counsel for the state and is not a formal charging. *See id.* at 1209. Rather, such an appearance "is for the purpose of complying with the requirements set forth in *Miranda v. Arizona.*" *Id.*

The Court notes that the summary-judgment record does not reflect any involvement of the Gillespie County District Attorney's Office on July 16, 2002. There is no summary-judgment proof that a prosecutor from the Gillespie County District Attorney's Office was present at Rothgery's July 16, 2002, appearance before Judge Schoessow or involved in any way in the probable-cause determination. To the contrary, the summary-judgment proof demonstrates that no decision had been made by the Gillespie County District Attorney's Office on July 16, 2002, to prosecute Rothgery for the criminal offense of unlawfully carrying a firearm by a felon. As the warnings form that Judge Schoessow presented to Rothgery reflects, no charges had been filed against Rothgery at that time. Rather, the form reflects that charges "will be filed" in Gillespie County district court.

For this Court to find that Rothgery's Sixth Amendment right to counsel attached on July 16, 2002, the Court would have to conclude that a warrantless arrest plus Article 15.17 warnings and a subsequent probable-cause determination, without involvement by prosecutorial forces, is sufficient to trigger the Sixth Amendment right to counsel. Such a holding would violate Supreme Court precedent equating adversary judicial proceedings with criminal prosecutions, which necessarily implies involvement, or, at a minimum, awareness of the prosecutor. *See McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment") quoted in *Texas v. Cobb*, 532 U.S. 162, 167–68, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); *Gouveia*, 467 U.S. at 188, 104 S.Ct. 2292 (Sixth Amendment requires existence of both criminal prosecution and accused). Further, such a holding would be dangerously close to violating the clear statement in *Gouveia* that the Sixth Amendment right to counsel does not attach at the time of arrest.[13] *See Gouveia*, 467 U.S. at 190, 104 S.Ct. 2292. Finally, such a holding would be inconsistent with Texas law regarding initiation of adversary judicial proceedings. *See Green* 872 S.W.2d at 720; *Nehman*, 721 S.W.2d at 323; *Wyatt*, 566 S.W.2d at 600.

13. In explaining that the Sixth Amendment right to counsel does not attach at the time of arrest, then Justice Rehnquist differentiated between the Sixth Amendment rights to counsel and to speedy trial. Although the Sixth Amendment's speedy-trial guarantee may attach before an indictment, and as early as the time of arrest and holding to answer a criminal charge, the Supreme Court had never held that the Sixth Amendment's right to counsel attaches at the time of arrest.

This difference is readily explainable, given the fact that the speedy trial right and the right to counsel protect different interests. While the right to counsel exists to protect the accused during trial-type confrontations with the prosecutor, the speedy trial right exists primarily to protect an individual's liberty interest, "to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald, supra*, 456 U.S. at 8, 102 S.Ct. at 1502. *See Barker v. Wingo*, 407 U.S. 514, 532–533, 92 S.Ct. 2182, 2192–2193, 33 L.Ed.2d 101 (1972); *United States v. Marion, supra*, 404 U.S. at 320, 92 S.Ct. at 463.

*Gouveia*, 467 U.S. at 190, 104 S.Ct. 2292. The distinction between the right to counsel and right to speedy trial further persuades the Court that the July 16, 2002 appearance did not initiate adversary judicial proceedings against Rothgery, as Rothgery was not held "to answer a criminal charge," but, instead, was only informed of the accusation against him.

In conclusion, the Court finds that no adversary judicial proceedings were initiated on July 16, 2002, under Texas law, either by way of the presentation of the probable cause affidavit to Judge Schoessow or by Rothgery's appearance before Judge Schoessow. Thus, Rothgery's Sixth Amendment right to counsel did not attach on July 16, 2002. The Court concludes that Gillespie County did not violate Rothgery's Sixth Amendment rights by failing to appoint Rothgery counsel from July 16, 2002 until January 23, 2003.[14]

 Turning to Rothgery's Fourteenth Amendment allegations, Rothgery alleges that Gillespie County violated his right to due process and to equal protection under the law by denying him access to counsel, in part, by delaying appointment of counsel for six months. The Sixth Amendment's right to counsel applies to the states through the Fourteenth Amendment. *See Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). A person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. *See Kirby* 406 U.S. at 688, 92 S.Ct. 1877. Because this Court has determined that no adversary judicial proceedings were initiated against Rothgery on July 16, 2002, and that his right to counsel under the Sixth Amendment did not attach at that time, Gillespie County did not unconstitutionally deny Rothgery access to counsel. Thus, there is no violation of the Fourteenth Amendment under either the due process or equal protection clauses.

## IV. Conclusion

**IT IS THEREFORE ORDERED** that Defendant Gillespie County's Motion for Summary Judgment (Doc. # 28) is **GRANTED**.

14. The Court recognizes that Rothgery testified in his deposition that he requested counsel on January 19, 2003, and that no counsel was appointed based on this request. As previously noted, this request is not included in the summary-judgment proof. Only the January 23, 2003 request, upon which Judge Ables acted immediately is before the Court. Construing, as the Court must, all facts in favor of Rothgery, the Court presumes Rothgery did request counsel on January 19, 2003. Gillespie County's failure to appoint counsel on January 19, 2003, is, at best, negligence, and not indicative of a policy, practice, or custom to avoid appointing counsel. As soon as Judge Ables was advised of Rothgery's January 23, 2003 request, Judge Ables appointed counsel.