(Slip Opinion) OCTOBER TERM, 2007 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ROTHGERY *v.* GILLESPIE COUNTY, TEXAS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 07–440.   Argued March 17, 2008—Decided June 23, 2008

Texas police relied on erroneous information that petitioner Rothgery had a previous felony conviction to arrest him as a felon in possession of a firearm.  The officers brought Rothgery before a magistrate judge, as required by state law, for a so-called "article 15.17 hearing," at which the Fourth Amendment probable-cause determination was made, bail was set, and Rothgery was formally apprised of the accusation against him.  After the hearing, the magistrate judge committed Rothgery to jail, and he was released after posting a surety bond. Rothgery had no money for a lawyer and made several unheeded oral and written requests for appointed counsel.  He was subsequently indicted and rearrested, his bail was increased, and he was jailed when he could not post the bail.  Subsequently, Rothgery was assigned a lawyer, who assembled the paperwork that prompted the indictment's dismissal.

   Rothgery then brought this 42 U. S. C. §1983 action against respondent County, claiming that if it had provided him a lawyer within a reasonable time after the article 15.17 hearing, he would not have been indicted, rearrested, or jailed.  He asserts that the County's unwritten policy of denying appointed counsel to indigent defendants out on bond until an indictment is entered violates his Sixth Amendment right to counsel.  The District Court granted the County summary judgment, and the Fifth Circuit affirmed, considering itself bound by Circuit precedent to the effect that the right to counsel did not attach at the article 15.17 hearing because the relevant prosecutors were not aware of, or involved in, Rothgery's arrest or appearance at the hearing, and there was no indication that the officer at Rothgery's appearance had any power to commit the State to prosecute without a prosecutor's knowledge or involvement.

Syllabus

*Held:* A criminal defendant's initial appearance before a magistrate judge, where he learns the charge against him and his liberty is subject to restriction, marks the initiation of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel.  Attachment does not also require that a prosecutor (as distinct from a police officer) be aware of that initial proceeding or involved in its conduct.  Pp. 5–20.

   (a) Texas's article 15.17 hearing marks the point of attachment, with the consequent state obligation to appoint counsel within a reasonable time once a request for assistance is made.  This Court has twice held that the right to counsel attaches at the initial appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty.  See *Michigan* v. *Jackson,* 475 U. S. 625, 629, n. 3; *Brewer* v. *Williams,* 430 U. S. 387, 398–399.  Rothgery's hearing was an initial appearance: he was taken before a magistrate judge, informed of the formal accusation against him, and sent to jail until he posted bail.  Thus, *Brewer* and *Jackson* control.  Pp. 5–10.

   (b) In *McNeil* v. *Wisconsin,* 501 U. S. 171, 180–181, the Court reaffirmed that "[t]he Sixth Amendment right to counsel attaches at the first formal proceeding against an accused," and observed that "in most States . . . free counsel is made available at that time."  That observation remains true today.  The overwhelming consensus practice conforms to the rule that the first formal proceeding is the point of attachment.  The Court is advised without contradiction that not only the Federal Government, including the District of Columbia, but 43 States take the first step toward appointing counsel before, at, or just after initial appearance.  To the extent the remaining 7 States have been denying appointed counsel at that time, they are a distinct minority.  Pp. 10–12.

   (c) Neither the Fifth Circuit nor the County offers an acceptable justification for the minority practice.  Pp. 12–19.

      (1) The Fifth Circuit found the determining factor to be that no prosecutor was aware of Rothgery's article 15.17 hearing or involved in it.  This prosecutorial awareness standard is wrong.  Neither *Brewer* nor *Jackson* said a word about the prosecutor's involvement as a relevant fact, much less a controlling one.  Those cases left no room for the factual enquiry the Circuit would require, and with good reason: an attachment rule that turned on determining the moment of a prosecutor's first involvement would be "wholly unworkable and impossible to administer," *Escobedo* v. *Illinois,* 378 U. S. 478, 496.  The Fifth Circuit derived its rule from the statement, in *Kirby* v. *Illinois,* 406 U. S. 682, 689, that the right to counsel attaches when the government has "committed itself to prosecute."  But what counts as

such a commitment is an issue of federal law unaffected by alloca-
tions of power among state officials under state law, cf. *Moran* v.
*Burbine*, 475 U. S. 412, 429, n. 3, and under the federal standard, an
accusation filed with a judicial officer is sufficiently formal, and the
government's commitment to prosecute it sufficiently concrete, when
the accusation prompts arraignment and restrictions on the accused's
liberty, see, *e.g., Kirby, supra,* at 689. Pp. 12–15.

    (2) The County relies on *United States* v. *Gouveia*, 467 U. S. 180,
in arguing that in considering the initial appearance's significance,
this Court must ignore prejudice to a defendant's pretrial liberty, it
being the concern, not of the right to counsel, but of the speedy-trial
right and the Fourth Amendment. But the County's suggestion that
Fifth Amendment protections at the early stage obviate attachment
of the Sixth Amendment right at initial appearance was refuted by
*Jackson*, 475 U. S., at 629, n. 3. And since the Court is not asked to
extend the right to counsel to a point earlier than formal judicial pro-
ceedings (as in *Gouveia*), but to defer it to those proceedings in which
a prosecutor is involved, *Gouveia* does not speak to the question at is-
sue. Pp. 15–17.

    (3) The County's third tack gets it no further. Stipulating that
the properly formulated test is whether the State has objectively
committed itself to prosecute, the County says that prosecutorial in-
volvement is but one form of evidence of such commitment and that
others include (1) the filing of formal charges or the holding of an ad-
versarial preliminary hearing to determine probable cause to file
such charges, and (2) a court appearance following arrest on an in-
dictment. Either version runs up against *Brewer* and *Jackson:* an
initial appearance following a charge signifies a sufficient commit-
ment to prosecute regardless of a prosecutor's participation, indict-
ment, information, or what the County calls a "formal" complaint.
The County's assertions that *Brewer* and *Jackson* are "vague" and
thus of limited, if any, precedential value are wrong. Although the
Court in those cases saw no need for lengthy disquisitions on the ini-
tial appearance's significance, that was because it found the attach-
ment issue an easy one. See, *e.g., Brewer, supra,* at 399. Pp. 17–19.

491 F. 3d 293, vacated and remanded.

    SOUTER, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and STEVENS, SCALIA, KENNEDY, GINSBURG, BREYER, and ALITO,
JJ., joined. ROBERTS, C. J., filed a concurring opinion, in which SCALIA,
J., joined. ALITO, J., filed a concurring opinion, in which ROBERTS, C. J.,
and SCALIA, J., joined. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–440

WALTER A. ROTHGERY, PETITIONER *v.* GILLESPIE COUNTY, TEXAS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 23, 2008]

JUSTICE SOUTER delivered the opinion of the Court.

This Court has held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty. See *Brewer* v. *Williams*, 430 U. S. 387, 398–399 (1977); *Michigan* v. *Jackson*, 475 U. S. 625, 629, n. 3 (1986). The question here is whether attachment of the right also requires that a public prosecutor (as distinct from a police officer) be aware of that initial proceeding or involved in its conduct. We hold that it does not.

## I

### A

Although petitioner Walter Rothgery has never been convicted of a felony,[1] a criminal background check disclosed an erroneous record that he had been, and on July

---

[1] "[F]elony charges . . . had been dismissed after Rothgery completed a diversionary program, and both sides agree that [he] did not have a felony conviction." 491 F. 3d 293, 294 (CA5 2007) (case below).

15, 2002, Texas police officers relied on this record to arrest him as a felon in possession of a firearm. The officers lacked a warrant, and so promptly brought Rothgery before a magistrate judge, as required by Tex. Crim. Proc. Code Ann., Art. 14.06(a) (West Supp. 2007).[2] Texas law has no formal label for this initial appearance before a magistrate, see 41 G. Dix & R. Dawson, Texas Practice Series: Criminal Practice and Procedure §15.01 (2d ed. 2001), which is sometimes called the "article 15.17 hearing," see, *e.g., Kirk* v. *State*, 199 S. W. 3d 467, 476–477 (Tex. App. 2006); it combines the Fourth Amendment's required probable-cause determination[3] with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him, see Tex. Crim. Proc. Code Ann., Art. 15.17(a).

Rothgery's article 15.17 hearing followed routine. The arresting officer submitted a sworn "Affidavit Of Probable Cause" that described the facts supporting the arrest and "charge[d] that . . . Rothgery . . . commit[ted] the offense of unlawful possession of a firearm by a felon—3rd degree felony [Tex. Penal Code Ann. §46.04]," App. to Pet. for Cert. 33a. After reviewing the affidavit, the magistrate judge "determined that probable cause existed for the

---

[2] A separate article of the Texas Code of Criminal Procedure requires prompt presentment in the case of arrests under warrant as well. See Art. 15.17(a) (West Supp. 2007). Whether the arrest is under warrant or warrantless, article 15.17 details the procedures a magistrate judge must follow upon presentment. See Art. 14.06(a) (in cases of warrantless arrest, "[t]he magistrate shall immediately perform the duties described in Article 15.17 of this Code").

[3] See *Gerstein* v. *Pugh*, 420 U. S. 103, 113–114 (1975) ("[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest[,] . . . . [but] the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest").

arrest." *Id.*, at 34a. The magistrate judge informed Rothgery of the accusation, set his bail at $5,000, and committed him to jail, from which he was released after posting a surety bond. The bond, which the Gillespie County deputy sheriff signed, stated that "Rothgery stands charged by complaint duly filed . . . with the offense of a . . . felony, to wit: Unlawful Possession of a Firearm by a Felon." *Id.*, at 39a. The release was conditioned on the defendant's personal appearance in trial court "for any and all subsequent proceedings that may be had relative to the said charge in the course of the criminal action based on said charge." *Ibid.*

Rothgery had no money for a lawyer and made several oral and written requests for appointed counsel,[4] which went unheeded.[5] The following January, he was indicted by a Texas grand jury for unlawful possession of a firearm by a felon, resulting in rearrest the next day, and an order increasing bail to $15,000. When he could not post it, he was put in jail and remained there for three weeks.

On January 23, 2003, six months after the article 15.17 hearing, Rothgery was finally assigned a lawyer, who promptly obtained a bail reduction (so Rothgery could get out of jail), and assembled the paperwork confirming that Rothgery had never been convicted of a felony. Counsel relayed this information to the district attorney, who in turn filed a motion to dismiss the indictment, which was granted.

––––––––––

[4] Because respondent Gillespie County obtained summary judgment in the current case, we accept as true that Rothgery made multiple requests.

[5] Rothgery also requested counsel at the article 15.17 hearing itself, but the magistrate judge informed him that the appointment of counsel would delay setting bail (and hence his release from jail). Given the choice of proceeding without counsel or remaining in custody, Rothgery waived the right to have appointed counsel present at the hearing. See 491 F. 3d, at 295, n. 2.

B

Rothgery then brought this 42 U. S. C. §1983 action against respondent Gillespie County, claiming that if the County had provided a lawyer within a reasonable time after the article 15.17 hearing, he would not have been indicted, rearrested, or jailed for three weeks. The County's failure is said to be owing to its unwritten policy of denying appointed counsel to indigent defendants out on bond until at least the entry of an information or in-dictment.[6] Rothgery sees this policy as violating his Sixth Amendment right to counsel.[7]

The District Court granted summary judgment to the County, see 413 F. Supp. 2d 806, 807 (WD Tex. 2006), and the Court of Appeals affirmed, see 491 F. 3d 293, 294 (CA5 2007). The Court of Appeals felt itself bound by Circuit precedent, see *id.*, at 296–297 (citing *Lomax* v. *Alabama*, 629 F. 2d 413 (CA5 1980), and *McGee* v. *Estelle*, 625 F. 2d 1206 (CA5 1980)), to the effect that the Sixth Amendment right to counsel did not attach at the article 15.17 hearing, because "the relevant prosecutors were not aware of or involved in Rothgery's arrest or appearance before the magistrate on July 16, 2002," and "[t]here is also no indi-cation that the officer who filed the probable cause affida-vit at Rothgery's appearance had any power to commit the state to prosecute without the knowledge or involvement of a prosecutor," 491 F. 3d, at 297.

───────────

[6] Rothgery does not challenge the County's written policy for ap-pointment of counsel, but argues that the County was not following that policy in practice. See 413 F. Supp. 2d 806, 809–810 (WD Tex. 2006).

[7] Such a policy, if proven, arguably would also be in violation of Texas state law, which appears to require appointment of counsel for indigent defendants released from custody, at the latest, when the "first court appearance" is made. See Tex. Crim. Proc. Code Ann., Art. 1.051(j). See also Brief for Texas Association of Counties et al. as *Amici Curiae* 13 (asserting that Rothgery "was statutorily entitled to the appoint-ment of counsel within three days after having requested it").

We granted certiorari, 552 U. S. \_\_\_ (2007), and now vacate and remand.

## II

The Sixth Amendment right of the "accused" to assistance of counsel in "all criminal prosecutions"[8] is limited by its terms: "it does not attach until a prosecution is commenced." *McNeil* v. *Wisconsin*, 501 U. S. 171, 175 (1991); see also *Moran* v. *Burbine*, 475 U. S. 412, 430 (1986). We have, for purposes of the right to counsel, pegged commencement to "'the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment,'" *United States* v. *Gouveia*, 467 U. S. 180, 188 (1984) (quoting *Kirby* v. *Illinois*, 406 U. S. 682, 689 (1972) (plurality opinion)). The rule is not "mere formalism," but a recognition of the point at which "the government has committed itself to prosecute," "the adverse positions of government and defendant have solidified," and the accused "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby*, *supra*, at 689. The issue is whether Texas's article 15.17 hearing marks that point, with the consequent state obligation to appoint counsel within a reasonable time once a request for assistance is made.

### A

When the Court of Appeals said no, because no prosecutor was aware of Rothgery's article 15.17 hearing or involved in it, the court effectively focused not on the start of adversarial judicial proceedings, but on the activities and knowledge of a particular state official who was presuma-

_____

[8] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

bly otherwise occupied. This was error.

As the Court of Appeals recognized, see 491 F. 3d, at 298, we have twice held that the right to counsel attaches at the initial appearance before a judicial officer, see *Jackson*, 475 U. S., at 629, n. 3; *Brewer* 430 U. S., at 399. This first time before a court, also known as the "'preliminary arraignment'" or "'arraignment on the complaint,'" see 1 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §1.4(g), p. 135 (3d ed. 2007), is generally the hearing at which "the magistrate informs the defendant of the charge in the complaint, and of various rights in further proceedings," and "determine[s] the conditions for pretrial release," *ibid.* Texas's article 15.17 hearing is an initial appearance: Rothgery was taken before a magistrate judge, informed of the formal accusation against him, and sent to jail until he posted bail. See *supra*, at 2–3.[9] *Brewer* and *Jackson* control.

The *Brewer* defendant surrendered to the police after a warrant was out for his arrest on a charge of abduction.

─────────────

[9] The Court of Appeals did not resolve whether the arresting officer's formal accusation would count as a "formal complaint" under Texas state law. See 491 F. 3d, at 298–300 (noting the confusion in the Texas state courts). But it rightly acknowledged (albeit in considering the separate question whether the complaint was a "formal charge") that the constitutional significance of judicial proceedings cannot be allowed to founder on the vagaries of state criminal law, lest the attachment rule be rendered utterly "vague and unpredictable." *Virginia* v. *Moore*, 553 U. S. ___, ___ (2008) (slip op., at 10). See 491 F. 3d, at 300 ("[W]e are reluctant to rely on the formalistic question of whether the affidavit here would be considered a 'complaint' or its functional equivalent under Texas case law and Article 15.04 of the Texas Code of Criminal Procedures—a question to which the answer is itself uncertain. Instead, we must look to the specific circumstances of this case and the nature of the affidavit filed at Rothgery's appearance before the magistrate" (footnote omitted)). What counts is that the complaint filed with the magistrate judge accused Rothgery of committing a particular crime and prompted the judicial officer to take legal action in response (here, to set the terms of bail and order the defendant locked up).

He was then "arraigned before a judge . . . on the out-
standing arrest warrant," and at the arraignment, "[t]he
judge advised him of his *Miranda* [v. *Arizona,* 384 U. S.
436 (1966)] rights and committed him to jail." *Brewer*, 430
U. S., at 391. After this preliminary arraignment, and
before an indictment on the abduction charge had been
handed up, police elicited incriminating admissions that
ultimately led to an indictment for first-degree murder.
Because neither of the defendant's lawyers had been
present when the statements were obtained, the Court
found it "clear" that the defendant "was deprived of . . . the
right to the assistance of counsel." *Id.*, at 397–398. In
plain terms, the Court said that "[t]here can be no doubt
in the present case that judicial proceedings had been
initiated" before the defendant made the incriminating
statements. *Id.*, at 399. Although it noted that the State
had conceded the issue, the Court nevertheless held that
the defendant's right had clearly attached for the reason
that "[a] warrant had been issued for his arrest, he had
been arraigned on that warrant before a judge in a . . .
courtroom, and he had been committed by the court to
confinement in jail." *Ibid.*[10]

_____

[10] The dissent says that "*Brewer*'s attachment holding is indisputably
no longer good law" because "we have subsequently held that the Sixth
Amendment right to counsel is '"offense specific,"'" *post*, at 13 (opinion
of THOMAS, J.) (quoting *Texas* v. *Cobb*, 532 U. S. 162, 164 (2001)), *i.e.*,
that it does not "exten[d] to crimes that are 'factually related' to those
that have actually been charged," *Cobb*, *supra*, at 167. It is true that
*Brewer* appears to have assumed that attachment of the right with
respect to the abduction charge should prompt attachment for the
murder charge as well. But the accuracy of the dissent's assertion ends
there, for nothing in *Cobb*'s conclusion that the right is offense specific
casts doubt on *Brewer*'s separate, emphatic holding that the initial
appearance marks the point at which the right attaches. Nor does
*Cobb* reflect, as the dissent suggests, see *post*, at 14, a more general
disapproval of our opinion in *Brewer*. While *Brewer* failed even to
acknowledge the issue of offense specificity, it spoke clearly and force-
fully about attachment. *Cobb* merely declined to follow *Brewer*'s

In *Jackson*, the Court was asked to revisit the question whether the right to counsel attaches at the initial appearance, and we had no more trouble answering it the second time around. *Jackson* was actually two consolidated cases, and although the State conceded that respondent Jackson's arraignment "represented the initiation of formal legal proceedings," 475 U. S., at 629, n. 3, it argued that the same was not true for respondent Bladel. In briefing us, the State explained that "[i]n Michigan, any person charged with a felony, after arrest, must be brought before a Magistrate or District Court Judge without unnecessary delay for his initial arraignment." Brief for Petitioner in *Michigan* v. *Bladel*, O. T. 1985, No. 84–1539, p. 24. The State noted that "[w]hile [Bladel] had been arraigned . . . , there is also a second arraignment in Michigan procedure . . . , at which time defendant has his first opportunity to enter a plea in a court with jurisdiction to render a final decision in a felony case." *Id.*, at 25. The State contended that only the latter proceeding, the "arraignment on the information or indictment," Y. Kamisar, W. LaFave, J. Israel, & N. King, Modern Criminal Procedure 28 (9th ed. 1999) (emphasis deleted), should trigger the Sixth Amendment right.[11]  "The defendant's

---

unmentioned assumption, and thus it lends no support to the dissent's claim that we should ignore what *Brewer* explicitly said.

[11] The State continued to press this contention at oral argument. See Tr. of Oral Arg. in *Michigan* v. *Jackson*, O. T. 1985, No. 84–1531 etc., p. 4 ("[T]he Michigan Supreme Court held that if a defendant, while at his initial appearance before a magistrate who has no jurisdiction to accept a final plea in the case, whose only job is ministerial, in other words to advise a defendant of the charge against him, set bond if bond is appropriate, and to advise him of his right to counsel and to get the administrative process going if he's indigent, the Michigan Supreme Court said if the defendant asked for appointed counsel at that stage, the police are forevermore precluded from initiating interrogation of that defendant"); *id.*, at 8 ("First of all, as a practical matter, at least in our courts, the police are rarely present for arraignment, for this type of

rights," the State insisted, "are fully protected in the context of custodial interrogation between initial arraignment and preliminary examination by the Fifth Amendment right to counsel" and by the preliminary examination itself.[12]  See *Bladel* Brief, *supra,* at 26.

We flatly rejected the distinction between initial arraignment and arraignment on the indictment, the State's argument being "untenable" in light of the "clear language in our decisions about the significance of arraignment." *Jackson*, *supra*, at 629, n. 3.  The conclusion was driven by the same considerations the Court had endorsed in *Brewer*: by the time a defendant is brought before a judicial officer, is informed of a formally lodged accusation, and has restrictions imposed on his liberty in aid of the prosecution, the State's relationship with the defendant has become solidly adversarial.  And that is just as true when the proceeding comes before the indictment (in the case of the initial arraignment on a formal complaint) as when it comes after it (at an arraignment on an indictment).[13]  See *Coleman* v. *Alabama*, 399 U. S. 1, 8 (1970)

——————

an arraignment, for an initial appearance, I guess we should use the terminology. . . . The prosecutor is not there for initial appearance.  We have people brought through a tunnel.  A court officer picks them up.  They take them down and the judge goes through this procedure. . . . There is typically nobody from our side, if you will, there to see what's going on").

  [12] The preliminary examination is a preindictment stage at which the defendant is allowed to test the prosecution's evidence against him, and to try to dissuade the prosecutor from seeking an indictment.  See *Coleman* v. *Alabama*, 399 U. S. 1 (1970).  In Texas, the defendant is notified of his right to a preliminary hearing, which in Texas is called an "examining trial," at the article 15.17 hearing.  See Tex. Crim. Proc. Code Ann., Art. 15.17(a).  The examining trial in Texas is optional only, and the defendant must affirmatively request it.  See Reply Brief for Petitioner 25.

  [13] The County, in its brief to this Court, suggests that although *Brewer* and *Jackson* spoke of attachment at the initial appearance, the cases might actually have turned on some unmentioned fact.  As to

(plurality opinion) (right to counsel applies at preindict-
ment preliminary hearing at which the "sole purposes . . .
are to determine whether there is sufficient evidence
against the accused to warrant presenting his case to the
grand jury, and, if so, to fix bail if the offense is bailable");
cf. *Owen* v. *State*, 596 So. 2d 985, 989, n. 7 (Fla. 1992)
("The term 'arraign' simply means to be called before a
court officer and charged with a crime").

B

Our latest look at the significance of the initial appear-
ance was *McNeil*, 501 U. S. 171, which is no help to the
County. In *McNeil* the State had conceded that the right
to counsel attached at the first appearance before a county
court commissioner, who set bail and scheduled a prelimi-
nary examination. See *id.*, at 173; see also *id.*, at 175 ("It
is undisputed, and we accept for purposes of the present
case, that at the time petitioner provided the incriminat-
ing statements at issue, his Sixth Amendment right had
attached . . ."). But we did more than just accept the
concession; we went on to reaffirm that "[t]he Sixth
Amendment right to counsel attaches at the first formal
proceeding against an accused," and observed that "in

─────────

*Brewer*, the County speculates that an information might have been
filed before the defendant's initial appearance. See Brief for Respon-
dent 34–36. But as Rothgery points out, the initial appearance in
*Brewer* was made in municipal court, and a felony information could
not have been filed there. See Reply Brief for Petitioner 11. As to
*Jackson*, the County suggests that the Court might have viewed Michi-
gan's initial arraignment as a significant proceeding only because the
defendant could make a statement at that hearing, and because re-
spondent Bladel did in fact purport to enter a plea of not guilty. See
Brief for Respondent 36–37. But this attempt to explain *Jackson* as a
narrow holding is impossible to square with *Jackson*'s sweeping rejec-
tion of the State's claims. It is further undermined by the fact that the
magistrate judge in Bladel's case, like the one in Texas's article 15.17
hearing, had no jurisdiction to accept a plea of guilty to a felony charge.
See Reply Brief for Petitioner 11–12.

most States, at least with respect to serious offenses, free counsel is made available at that time . . . ." *Id.*, at 180–181.

That was 17 years ago, the same is true today, and the overwhelming consensus practice conforms to the rule that the first formal proceeding is the point of attachment. We are advised without contradiction that not only the Federal Government, including the District of Columbia, but 43 States take the first step toward appointing counsel "before, at, or just after initial appearance." App. to Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 1a; see *id.*, at 1a–7a (listing jurisdictions);[14]

—————

[14] The 43 States are these: (1) Alaska: see Alaska Stat. §18.85.100 (2006); Alaska Rule Crim. Proc. 5 (Lexis 2006–2007); (2) Arizona: see Ariz. Rules Crim. Proc. 4.2, 6.1 (West Supp. 2007), (West 1998); (3) Arkansas: see Ark. Rule Crim. Proc. 8.2 (2006); *Bradford* v. *State*, 325 Ark. 278, 927 S. W. 2d 329 (1996); (4) California: see Cal. Penal Code §§858, 859 (West Supp. 2008); *In re Johnson*, 62 Cal. 2d 325, 329–330, 398 P. 2d 420, 422–423 (1965); (5) Connecticut: see Conn. Gen. Stat. §54–1b (2005); Conn. Super. Ct. Crim. Rules §§37–1, 37–3, 37–6 (West 2008); *State* v. *Pierre*, 277 Conn. 42, 95–96, 890 A. 2d 474, 507 (2006); (6) Delaware: see Del. Code Ann., Tit. 29, §4604 (2003); Del. Super. Ct. Crim. Rules 5, 44 (2008); *Deputy* v. *State*, 500 A. 2d 581 (Del. 1985); (7) Florida: see Fla. Rule Crim. Proc. 3.111 (West 2007); (8) Georgia: see Ga. Code Ann. §§17–4–26 (2004), 17–12–23 (Supp. 2007); *O'Kelley* v. *State*, 278 Ga. 564, 604 S. E. 2d 509 (2004); (9) Hawaii: see Haw. Rev. Stat. §§802–1, 803–9 (1993); (10) Idaho: see Idaho Crim. Rules 5, 44 (Lexis 2007); Idaho Code §19–852 (Lexis 2004); (11) Illinois: see Ill. Comp. Stat., ch. 725, §5/109–1 (2006); (12) Indiana: see Ind. Code §§35–33–7–5, 35–33–7–6 (West 2004); (13) Iowa: see Iowa Rules Crim. Proc. §§2.2, 2.28 (West 2008); (14) Kentucky: see Ky. Rule Crim. Proc. §3.05 (Lexis 2008); (15) Louisiana: see La. Code Crim. Proc. Ann., Art 230.1 (West Supp. 2008); (16) Maine: see Me. Rule Crim. Proc. 5C (West 2007); (17) Maryland: see Md. Ann. Code, Art. 27A, §4 (Lexis Supp. 2007); Md. Rule 4–214 (Lexis 2008); *McCarter* v. *State*, 363 Md. 705, 770 A. 2d 195 (2001); (18) Massachusetts: see Mass. Rule Crim. Proc. 7 (West 2006); (19) Michigan: see Mich. Rules Crim. Proc 6.005 (West 2008); (20) Minnesota: see Minn. Rules Crim. Proc. 5.01, 5.02 (2006); (21) Mississippi: see *Jimpson* v. *State*, 532 So. 2d 985 (Miss. 1988); (22) Missouri: see Mo. Rev. Stat. §600.048 (2000); (23) Montana: see Mont.

see also Brief for American Bar Association as *Amicus Curiae* 5–8 (describing the ABA's position for the past 40 years that counsel should be appointed "certainly no later than the accused's initial appearance before a judicial officer"). And even in the remaining 7 States (Alabama, Colorado, Kansas, Oklahoma, South Carolina, Texas, and Virginia) the practice is not free of ambiguity. See App. to Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 5a–7a (suggesting that the practice in Alabama, Kansas, South Carolina, and Virginia might actually be consistent with the majority approach); see also n. 7, *supra.* In any event, to the extent these States have been denying appointed counsel on the heels of the first appearance, they are a distinct minority.

## C

The only question is whether there may be some arguable justification for the minority practice. Neither the

---

Code Ann. §46–8–101 (2007); (24) Nebraska: see Neb. Rev. Stat. §29–3902 (1995); (25) Nevada: see Nev. Rev. Stat. §178.397 (2007); (26) New Hampshire: see N. H. Rev. Stat. Ann. §604–A:3 (2001); (27) New Jersey: see N. J. Rule Crim. Proc. 3:4–2 (West 2008); *State* v. *Tucker*, 137 N. J. 259, 645 A. 2d 111 (1994); (28) New Mexico: see N. M. Stat. Ann. §31–16–3 (2000); (29) New York: see N. Y. Crim. Proc. Law Ann. §180.10 (West 2007); (30) North Carolina: see N. C. Gen. Stat. Ann. §7A–451 (Lexis 2007); (31) North Dakota: see N. D. Rules Crim. Proc. 5, 44 (Lexis 2008–2009); (32) Ohio: see Ohio Rules Crim. Proc. 5, 44 (Lexis 2006); (33) Oregon: see Ore. Rev. Stat. §§135.010, 135.040, 135.050 (2007); (34) Pennsylvania: see Pa. Rules Crim. Proc. 122, 519 (West 2008); (35) Rhode Island: see R. I. Dist. Ct. Rules Crim. Proc. 5, 44 (2007); (36) South Dakota: see S. D. Rule Crim. Proc. §23A–40–6 (2007); (37) Tennessee: see Tenn. Rule Crim. Proc. 44 (2007); (38) Utah: see Utah Code Ann. §77–32–302 (Lexis Supp. 2007); (39) Vermont: see Vt. Stat. Ann., Tit. 13, §5234 (1998); Vt. Rules Crim. Proc. 5, 44 (2003); (40) Washington: see Wash. Super. Ct. Crim. Rule 3.1 (West 2008); (41) West Virginia: see W. Va. Code Ann. §50–4–3 (Lexis 2000); *State* v. *Barrow*, 178 W. Va. 406, 359 S. E. 2d 844 (1987); (42) Wisconsin: see Wis. Stat. §967.06 (2003–2004); (43) Wyoming: see Wyo. Stat. Ann. §7–6–105 (2007); Wyo. Rules Crim. Proc. 5, 44 (2007).

Court of Appeals in its opinion, nor the County in its briefing to us, has offered an acceptable one.

### 1

The Court of Appeals thought *Brewer* and *Jackson* could be distinguished on the ground that "neither case addressed the issue of prosecutorial involvement," and the cases were thus "neutral on the point," 491 F. 3d, at 298. With *Brewer* and *Jackson* distinguished, the court then found itself bound by Circuit precedent that "'an adversary criminal proceeding has not begun in a case where the prosecution officers are unaware of either the charges or the arrest.'" See 491 F. 3d, at 297 (quoting *McGee* v. *Estelle*, 625 F. 3d 1206, 1208 (CA5 1980)). Under this standard of prosecutorial awareness, attachment depends not on whether a first appearance has begun adversary judicial proceedings, but on whether the prosecutor had a hand in starting it. That standard is wrong.

Neither *Brewer* nor *Jackson* said a word about the prosecutor's involvement as a relevant fact, much less a controlling one. Those cases left no room for the factual enquiry the Court of Appeals would require, and with good reason: an attachment rule that turned on determining the moment of a prosecutor's first involvement would be "wholly unworkable and impossible to administer," *Escobedo* v. *Illinois*, 378 U. S. 478, 496 (1964) (White, J., dissenting), guaranteed to bog the courts down in prying enquiries into the communication between police (who are routinely present at defendants' first appearances) and the State's attorneys (who are not), see Brief for Petitioner 39–41. And it would have the practical effect of resting attachment on such absurd distinctions as the day of the month an arrest is made, see Brief for Brennan Center of Justice et al. as *Amici Curiae* 10 (explaining that "jails may be required to report their arrestees to county prosecutor offices on particular days" (citing Tex. Crim. Proc.

Code Ann., Art. 2.19)); or "the sophistication, or lack thereof, of a jurisdiction's computer intake system," Brief for Brennan Center, *supra,* at 11; see also *id.*, at 10–12 (noting that only "[s]ome Texas counties . . . have computer systems that provide arrest and detention information simultaneously to prosecutors, law enforcement officers, jail personnel, and clerks. Prosecutors in these jurisdictions use the systems to prescreen cases early in the process before an initial appearance" (citing D. Carmichael, M. Gilbert, & M. Voloudakis, Texas A&M U., Public Policy Research Inst., Evaluating the Impact of Direct Electronic Filing in Criminal Cases: Closing the Paper Trap 2–3 (2006), online at http://www.courts.state.tx. us/tfid/pdf/FinalReport7-12-06wackn.pdf (as visited June 19, 2008, and available in Clerk of Court's case file))).

It is not that the Court of Appeals believed that any such regime would be desirable, but it thought originally that its rule was implied by this Court's statement that the right attaches when the government has "committed itself to prosecute." *Kirby*, 406 U. S., at 689. The Court of Appeals reasoned that because "the decision not to prosecute is the quintessential function of a prosecutor" under Texas law, 491 F. 3d, at 297 (internal quotation marks omitted), the State could not commit itself to prosecution until the prosecutor signaled that it had.

But what counts as a commitment to prosecute is an issue of federal law unaffected by allocations of power among state officials under a State's law, cf. *Moran,* 475 U. S., at 429, n. 3 ("[T]he type of circumstances that would give rise to the right would certainly have a federal definition"), and under the federal standard, an accusation filed with a judicial officer is sufficiently formal, and the government's commitment to prosecute it sufficiently concrete, when the accusation prompts arraignment and restrictions on the accused's liberty to facilitate the prosecution, see *Jackson*, 475 U. S., at 629, n. 3; *Brewer*, 430

U. S., at 399; *Kirby, supra*, at 689; see also n. 9, *supra*. From that point on, the defendant is "faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law" that define his capacity and control his actual ability to defend himself against a formal accusation that he is a criminal. *Kirby, supra,* at 689. By that point, it is too late to wonder whether he is "accused" within the meaning of the Sixth Amendment, and it makes no practical sense to deny it. See Grano, *Rhode Island* v. *Innis*: A Need to Reconsider the Constitutional Premises Underlying the Law of Confessions, 17 Am. Crim. L. Rev. 1, 31 (1979) ("[I]t would defy common sense to say that a criminal prosecution has not commenced against a defendant who, perhaps incarcerated and unable to afford judicially imposed bail, awaits preliminary examination on the authority of a charging document filed by the prosecutor, less typically by the police, and approved by a court of law" (internal quotation marks omitted)). All of this is equally true whether the machinery of prosecution was turned on by the local police or the state attorney general. In this case, for example, Rothgery alleges that after the initial appearance, he was "unable to find any employment for wages" because "all of the potential employers he contacted knew or learned of the criminal charge pending against him." Original Complaint in No. 1:04–CV–00456–LY (WD Tex., July 15, 2004), p. 5. One may assume that those potential employers would still have declined to make job offers if advised that the county prosecutor had not filed the complaint.

### 2

The County resists this logic with the argument that in considering the significance of the initial appearance, we must ignore prejudice to a defendant's pretrial liberty, reasoning that it is the concern, not of the right to counsel,

but of the speedy-trial right and the Fourth Amendment. See Brief for Respondent 47–51. And it cites *Gouveia*, 467 U. S. 180, in support of its contention. See Brief for Respondent 49; see also Brief for Texas et al. as *Amici Curiae* 8–9. We think the County's reliance on *Gouveia* is misplaced, and its argument mistaken.

The defendants in *Gouveia* were prison inmates, suspected of murder, who had been placed in an administrative detention unit and denied counsel up until an indictment was filed. Although no formal judicial proceedings had taken place prior to the indictment, see 467 U. S., at 185, the defendants argued that their administrative detention should be treated as an accusation for purposes of the right to counsel because the government was actively investigating the crimes. We recognized that "because an inmate suspected of a crime is already in prison, the prosecution may have little incentive promptly to bring formal charges against him, and that the resulting preindictment delay may be particularly prejudicial to the inmate," *id.,* at 192, but we noted that statutes of limitation and protections of the Fifth Amendment guarded against delay, and that there was no basis for "depart[ing] from our traditional interpretation of the Sixth Amendment right to counsel in order to provide additional protections for [the inmates]," *ibid.*

*Gouveia*'s holding that the Sixth Amendment right to counsel had not attached has no application here. For one thing, *Gouveia* does not affect the conclusion we reaffirmed two years later in *Jackson*, that bringing a defendant before a court for initial appearance signals a sufficient commitment to prosecute and marks the start of adversary judicial proceedings. (Indeed, *Jackson* refutes the County's argument that Fifth Amendment protections at the early stage obviate attachment of the Sixth Amendment right at initial appearance. See *supra*, at 8–9.) And since we are not asked to extend the right to counsel to a

point earlier than formal judicial proceedings (as in *Gouveia*), but to defer it to those proceedings in which a prosecutor is involved, *Gouveia* does not speak to the question before us.

The County also tries to downplay the significance of the initial appearance by saying that an attachment rule unqualified by prosecutorial involvement would lead to the conclusion "that the State has statutorily committed to prosecute *every* suspect arrested by the police," given that "state law requires [an article 15.17 hearing] for every arrestee." Brief for Respondent 24 (emphasis in original). The answer, though, is that the State has done just that, subject to the option to change its official mind later. The State may rethink its commitment at any point: it may choose not to seek indictment in a felony case, say, or the prosecutor may enter *nolle prosequi* after the case gets to the jury room. But without a change of position, a defendant subject to accusation after initial appearance is headed for trial and needs to get a lawyer working, whether to attempt to avoid that trial or to be ready with a defense when the trial date arrives.

3

A third tack on the County's part, slightly different from the one taken by the Fifth Circuit, gets it no further. The County stipulates that "the properly formulated test is not . . . merely whether prosecutors have had any involvement in the case whatsoever, but instead whether the State has objectively committed itself to prosecute." *Id.*, at 31. It then informs us that "[p]rosecutorial involvement is merely one form of evidence of such commitment." *Ibid.* Other sufficient evidentiary indications are variously described: first (expansively) as "the filing of formal charges . . . by information, indictment or formal complaint, or the holding of an adversarial preliminary hearing to determine probable cause to file such charges," *ibid.*

(citing *Kirby*, 406 U. S., at 689); then (restrictively) as a court appearance following "arrest . . . on an indictment or information," Brief for Respondent 32. Either version, in any event, runs up against *Brewer* and *Jackson*: an initial appearance following a charge signifies a sufficient commitment to prosecute regardless of a prosecutor's participation, indictment, information, or what the County calls a "formal" complaint.

So the County is reduced to taking aim at those cases. *Brewer* and *Jackson*, we are told, are "vague" and thus of "limited, if any, precedential value." Brief for Respondent 33, 35; see also *id.*, at 32, n. 13 (asserting that *Brewer* and *Jackson* "neither provide nor apply an analytical framework for determining attachment"). And, according to the County, our cases (*Brewer* and *Jackson* aside) actually establish a "general rule that the right to counsel attaches at the point that [what the County calls] formal charges are filed," Brief for Respondent 19, with exceptions allowed only in the case of "a very limited set of specific preindictment situations," *id.*, at 23. The County suggests that the latter category should be limited to those appearances at which the aid of counsel is urgent and "'the dangers to the accused of proceeding without counsel'" are great. *Id.*, at 28 (quoting *Patterson* v. *Illinois*, 487 U. S. 285, 298 (1988)). Texas's article 15.17 hearing should not count as one of those situations, the County says, because it is not of critical significance, since it "allows no presentation of witness testimony and provides no opportunity to expose weaknesses in the government's evidence, create a basis for later impeachment, or even engage in basic discovery." Brief for Respondent 29.

We think the County is wrong both about the clarity of our cases and the substance that we find clear. Certainly it is true that the Court in *Brewer* and *Jackson* saw no need for lengthy disquisitions on the significance of the initial appearance, but that was because it found the

attachment issue an easy one. The Court's conclusions were not vague; *Brewer* expressed "no doubt" that the right to counsel attached at the initial appearance, 430 U. S., at 399, and *Jackson* said that the opposite result would be "untenable," 475 U. S., at 629, n. 3.

If, indeed, the County had simply taken the cases at face value, it would have avoided the mistake of merging the attachment question (whether formal judicial proceedings have begun) with the distinct "critical stage" question (whether counsel must be present at a postattachment proceeding unless the right to assistance is validly waived). Attachment occurs when the government has used the judicial machinery to signal a commitment to prosecute as spelled out in *Brewer* and *Jackson*. Once attachment occurs, the accused at least[15] is entitled to the presence of appointed counsel during any "critical stage" of the postattachment proceedings; what makes a stage critical is what shows the need for counsel's presence.[16] Thus, counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself.

The County thus makes an analytical mistake in its assumption that attachment necessarily requires the occurrence or imminence of a critical stage. See Brief for Respondent 28–30. On the contrary, it is irrelevant to attachment that the presence of counsel at an article 15.17

---

[15] We do not here purport to set out the scope of an individual's post-attachment right to the presence of counsel. It is enough for present purposes to highlight that the enquiry into that right is a different one from the attachment analysis.

[16] The cases have defined critical stages as proceedings between an individual and agents of the State (whether "formal or informal, in court or out," see *United States* v. *Wade*, 388 U. S. 218, 226 (1967)) that amount to "trial-like confrontations," at which counsel would help the accused "in coping with legal problems or . . . meeting his adversary," *United States* v. *Ash*, 413 U. S. 300, 312–313 (1973); see also *Massiah* v. *United States*, 377 U. S. 201 (1964).

hearing, say, may not be critical, just as it is irrelevant that counsel's presence may not be critical when a prosecutor walks over to the trial court to file an information. As we said in *Jackson*, "[t]he question whether arraignment signals the initiation of adversary judicial proceedings . . . is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel." 475 U. S., at 630, n. 3. Texas's article 15.17 hearing plainly signals attachment, even if it is not itself a critical stage.[17]

## III

Our holding is narrow. We do not decide whether the 6-month delay in appointment of counsel resulted in prejudice to Rothgery's Sixth Amendment rights, and have no occasion to consider what standards should apply in deciding this. We merely reaffirm what we have held before and what an overwhelming majority of American jurisdictions understand in practice: a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel. Because the Fifth Circuit came to a different conclusion on this threshold issue, its judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[17]The dissent likewise anticipates an issue distinct from attachment when it claims Rothgery has suffered no harm the Sixth Amendment recognizes. *Post*, at 18. Whether the right has been violated and whether Rothgery has suffered cognizable harm are separate questions from when the right attaches, the sole question before us.

# SUPREME COURT OF THE UNITED STATES

_____

No. 07–440

_____

## WALTER A. ROTHGERY, PETITIONER *v.* GILLESPIE COUNTY, TEXAS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[June 23, 2008]

CHIEF JUSTICE ROBERTS, with whom JUSTICE SCALIA joins, concurring.

JUSTICE THOMAS's analysis of the present issue is compelling, but I believe the result here is controlled by *Brewer* v. *Williams*, 430 U. S. 387 (1977), and *Michigan* v. *Jackson*, 475 U. S. 625 (1986). A sufficient case has not been made for revisiting those precedents, and accordingly I join the Court's opinion.

I also join JUSTICE ALITO's concurrence, which correctly distinguishes between the time the right to counsel attaches and the circumstances under which counsel must be provided.

# SUPREME COURT OF THE UNITED STATES

No. 07–440

## WALTER A. ROTHGERY, PETITIONER *v.* GILLESPIE COUNTY, TEXAS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 23, 2008]

JUSTICE ALITO, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, concurring.

I join the Court's opinion because I do not understand it to hold that a defendant is entitled to the assistance of appointed counsel as soon as his Sixth Amendment right attaches. As I interpret our precedents, the term "attachment" signifies nothing more than the beginning of the defendant's prosecution. It does not mark the beginning of a substantive entitlement to the assistance of counsel. I write separately to elaborate on my understanding of the term "attachment" and its relationship to the Amendment's substantive guarantee of "the Assistance of Counsel for [the] defence."

The Sixth Amendment provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Amendment thus defines the scope of the right to counsel in three ways: It provides *who* may assert the right ("the accused"); *when* the right may be asserted ("[i]n all criminal prosecutions"); and *what* the right guarantees ("the right . . . to have the Assistance of Counsel for his defence").

It is in the context of interpreting the Amendment's answer to the second of these questions—when the right may be asserted—that we have spoken of the right "at-

taching." In *Kirby* v. *Illinois*, 406 U. S. 682, 688 (1972), a plurality of the Court explained that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." A majority of the Court elaborated on that explanation in *Moore* v. *Illinois*, 434 U. S. 220 (1977):

> "In *Kirby* v. *Illinois*, the plurality opinion made clear that the right to counsel announced in *Wade* and *Gilbert* attaches only to corporeal identifications conducted at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. This is so because the initiation of such proceedings marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. Thus, in *Kirby* the plurality held that the prosecution's evidence of a robbery victim's one-on-one stationhouse identification of an uncounseled suspect shortly after the suspect's arrest was admissible because adversary judicial criminal proceedings had not yet been initiated." *Id.,* at 226–227 (internal quotation marks and citations omitted).

When we wrote in *Kirby* and *Moore* that the Sixth Amendment right had "attached," we evidently meant nothing more than that a "criminal prosecutio[n]" had begun. Our cases have generally used the term in that narrow fashion. See *Texas* v. *Cobb*, 532 U. S. 162, 167 (2001) (internal quotation marks omitted); *McNeil* v. *Wisconsin*, 501 U. S. 171, 175 (1991); *Michigan* v. *Harvey*, 494 U. S. 344, 353 (1990); *Satterwhite* v. *Texas*, 486 U. S. 249, 254–255 (1988); *Michigan* v. *Jackson*, 475 U. S. 625, 629, and n. 3 (1986); *Moran* v. *Burbine*, 475 U. S. 412, 428 (1986); *United States* v. *Gouveia*, 467 U. S. 180, 188

(1984); *Edwards* v. *Arizona*, 451 U. S. 477, 480, n. 7 (1981); *Doggett* v. *United States*, 505 U. S. 647, 663, n. 2 (1992) (THOMAS, J., dissenting); *Patterson* v. *Illinois*, 487 U. S. 285, 303–304 (1988) (STEVENS, J., dissenting); *United States* v. *Ash*, 413 U. S. 300, 322 (1973) (Stewart, J., concurring in judgment). But see *Estelle* v. *Smith*, 451 U. S. 454, 469 (1981) ("[W]e have held that the right to counsel granted by the Sixth Amendment means that a person is entitled to the help of a lawyer at or after the time that adversary judicial proceedings have been initiated against him . . ." (internal quotation marks omitted)); *Brewer* v. *Williams*, 430 U. S. 387, 398 (1977) ("[T]he right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him . . .").

Because pretrial criminal procedures vary substantially from jurisdiction to jurisdiction, there is room for disagreement about when a "prosecution" begins for Sixth Amendment purposes. As the Court, notes, however, we have previously held that "arraignments" that were functionally indistinguishable from the Texas magistration marked the point at which the Sixth Amendment right to counsel "attached." See *ante,* at 6 (discussing *Jackson, supra*, and *Brewer*, *supra*).

It does not follow, however, and I do not understand the Court to hold, that the county had an obligation to appoint an attorney to represent petitioner within some specified period after his magistration. To so hold, the Court would need to do more than conclude that petitioner's criminal prosecution had begun. It would also need to conclude that the assistance of counsel in the wake of a Texas magistration is part of the substantive guarantee of the Sixth Amendment. That question lies beyond our reach, petitioner having never sought our review of it. See Pet. for Cert. i (inviting us to decide whether the Fifth Circuit

erred in concluding "that adversary judicial proceedings . . . had not commenced, and petitioner's Sixth Amendment rights had not attached"). To recall the framework laid out earlier, we have been asked to address only the *when* question, not the *what* question. Whereas the temporal scope of the right is defined by the words "[i]n all criminal prosecutions," the right's substantive guarantee flows from a different textual font: the words "Assistance of Counsel for his defence."

In interpreting this latter phrase, we have held that "defence" means defense at trial, not defense in relation to other objectives that may be important to the accused. See *Gouveia*, *supra*, at 190 ("[T]he right to counsel exists to protect the accused during trial-type confrontations with the prosecutor . . ."); *Ash*, *supra*, at 309 ("[T]he core purpose of the counsel guarantee was to assure 'Assistance' at trial . . ."). We have thus rejected the argument that the Sixth Amendment entitles the criminal defendant to the assistance of appointed counsel at a probable cause hearing. See *Gerstein* v. *Pugh*, 420 U. S. 103, 122–123 (1975) (observing that the Fourth Amendment hearing "is addressed only to pretrial custody" and has an insubstantial effect on the defendant's trial rights). More generally, we have rejected the notion that the right to counsel entitles the defendant to a "preindictment private investigator." *Gouveia*, *supra*, at 191.

At the same time, we have recognized that certain pretrial events may so prejudice the outcome of the defendant's prosecution that, as a practical matter, the defendant must be represented at those events in order to enjoy genuinely effective assistance at trial. See, *e.g., Ash*, *supra*, at 309–310; *United States* v. *Wade*, 388 U. S. 218, 226 (1967). Thus, we have held that an indigent defendant is entitled to the assistance of appointed counsel at a preliminary hearing if "substantial prejudice . . . inheres in the . . . confrontation" and "counsel [may] help avoid

that prejudice." *Coleman* v. *Alabama*, 399 U. S. 1, 9 (1970) (plurality opinion) (internal quotation marks omitted); see also *White* v. *Maryland*, 373 U. S. 59, 60 (1963) *(per curiam)*. We have also held that the assistance of counsel is guaranteed at a pretrial lineup, since "the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." *Wade*, *supra*, at 228. Other "critical stages" of the prosecution include pretrial interrogation, a pretrial psychiatric exam, and certain kinds of arraignments. See *Harvey*, 494 U. S., at 358, n. 4; *Estelle*, *supra*, at 470–471; *Coleman*, *supra*, at 7–8 (plurality opinion).

Weaving together these strands of authority, I interpret the Sixth Amendment to require the appointment of counsel only after the defendant's prosecution has begun, and then only as necessary to guarantee the defendant effective assistance at trial. Cf. *McNeil*, 501 U. S., at 177–178 ("The purpose of the Sixth Amendment counsel guarantee—and hence the purpose of invoking it—is to protec[t] the unaided layman at critical confrontations with his expert adversary, the government, *after* the adverse positions of government and defendant have solidified with respect to a particular alleged crime" (emphasis and alteration in original; internal quotation marks omitted)). It follows that defendants in Texas will not necessarily be entitled to the assistance of counsel within some specified period after their magistrations. See *ante,* at 19 (opinion of the Court) (pointing out the "analytical mistake" of assuming "that attachment necessarily requires the occurrence or imminence of a critical stage"). Texas counties need only appoint counsel as far in advance of trial, and as far in advance of any pretrial "critical stage," as necessary to guarantee effective assistance at trial. Cf. *ibid.*

("[C]ounsel must be appointed within a reasonable time after attachment *to allow for adequate representation at any critical stage before trial, as well as at trial itself*" (emphasis added)).

The Court expresses no opinion on whether Gillespie County satisfied that obligation in this case. Petitioner has asked us to decide only the limited question whether his magistration marked the beginning of his "criminal prosecutio[n]" within the meaning of the Sixth Amendment. Because I agree with the Court's resolution of that limited question, I join its opinion in full.

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–440

———————

## WALTER A. ROTHGERY, PETITIONER *v.* GILLESPIE COUNTY, TEXAS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[June 23, 2008]

JUSTICE THOMAS, dissenting.

The Court holds today—for the first time after plenary consideration of the question—that a criminal prosecution begins, and that the Sixth Amendment right to counsel therefore attaches, when an individual who has been placed under arrest makes an initial appearance before a magistrate for a probable-cause determination and the setting of bail. Because the Court's holding is not supported by the original meaning of the Sixth Amendment or any reasonable interpretation of our precedents, I respectfully dissent.

I

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The text of the Sixth Amendment thus makes clear that the right to counsel arises only upon initiation of a "criminal prosecutio[n]." For that reason, the Court has repeatedly stressed that the Sixth Amendment right to counsel "does not attach until a prosecution is commenced." *McNeil* v. *Wisconsin*, 501 U. S. 171, 175 (1991); see also *United States* v. *Gouveia*, 467 U. S. 180, 188 (1984) ("[T]he literal language of the Amendment . . . requires the existence of both a 'criminal prosecutio[n]' and an 'accused'"). Echoing

this refrain, the Court today reiterates that "[t]he Sixth Amendment right of the 'accused' to assistance of counsel in 'all criminal prosecutions' is limited by its terms." *Ante*, at 5 (footnote omitted).

Given the Court's repeated insistence that the right to counsel is textually limited to "criminal prosecutions," one would expect the Court's jurisprudence in this area to be grounded in an understanding of what those words meant when the Sixth Amendment was adopted. Inexplicably, however, neither today's decision nor any of the other numerous decisions in which the Court has construed the right to counsel has attempted to discern the original meaning of "criminal prosecutio[n]." I think it appropriate to examine what a "criminal prosecutio[n]" would have been understood to entail by those who adopted the Sixth Amendment.

## A

There is no better place to begin than with Blackstone, "whose works constituted the preeminent authority on English law for the founding generation." *Alden* v. *Maine*, 527 U. S. 706, 715 (1999). Blackstone devoted more than 100 pages of his Commentaries on the Laws of England to a discussion of the "regular and ordinary method of proceeding in the courts of criminal jurisdiction." 4 W. Blackstone, Commentaries *289 (hereinafter Blackstone).

At the outset of his discussion, Blackstone organized the various stages of a criminal proceeding "under twelve general heads, following each other in a progressive order." *Ibid.* The first six relate to pretrial events: "1. Arrest; 2. Commitment and bail; 3. *Prosecution;* 4. Process; 5. Arraignment, and it's incidents; 6. Plea, and issue." *Ibid.* (emphasis added). Thus, the first significant fact is that Blackstone did not describe the entire criminal process as a "prosecution," but rather listed prosecution as the third step in a list of successive stages. For a more complete

understanding of what Blackstone meant by "prosecution," however, we must turn to chapter 23, entitled "Of the Several Modes of Prosecution." *Id.*, at \*301. There, Blackstone explained that—after arrest and examination by a justice of the peace to determine whether a suspect should be discharged, committed to prison, or admitted to bail, *id.*, at \*296—the "next step towards the punishment of offenders is their *prosecution, or the manner of their formal accusation*," *id.*, at \*301 (emphasis added).

Blackstone thus provides a definition of "prosecution": the manner of an offender's "formal accusation." The modifier "formal" is significant because it distinguishes "prosecution" from earlier stages of the process involving a different kind of accusation: the allegation of criminal conduct necessary to justify arrest and detention. Blackstone's discussion of arrest, commitment, and bail makes clear that a person could not be arrested and detained without a "charge" or "accusation," *i.e.*, an allegation, supported by probable cause, that the person had committed a crime. See *id.*, at \*289–\*300. But the accusation justifying arrest and detention was clearly preliminary to the "formal accusation" that Blackstone identified with "prosecution." See *id.*, at \*290, \*318.

By "formal accusation," Blackstone meant, in most cases, "indictment, the most usual and effectual means of prosecution." *Id.*, at \*302. Blackstone defined an "indictment" as "a written accusation of one or more persons of a crime or misdemeanor, preferred to, and presented upon oath by, a grand jury." *Ibid.* (emphasis deleted). If the grand jury was "satisfied of the truth of the accusation," it endorsed the indictment, *id.*, at \*305–\*306, which was then "publicly delivered into court," *id.*, at \*306, "afterwards to be tried and determined," *id.*, at \*303, "before an officer having power to punish the [charged] offence," 2 T. Cunningham, A New and Complete Law Dictionary (2d ed. 1771).

In addition to indictment, Blackstone identified two other "methods of prosecution at the suit of the king." 4 Blackstone *312. The first was presentment, which, like an indictment, was a grand jury's formal accusation "of an offence, inquirable in the Court where it [was] presented." 5 G. Jacob, The Law-Dictionary 278–279 (1811). The principal difference was that the accusation arose from "the notice taken by a grand jury of any offence from their own knowledge or observation" rather than from a "bill of indictment laid before them." 4 Blackstone *301. The second was information, "the only species of proceeding at the suit of the king, without a previous indictment or presentment by a grand jury." *Id.*, at *308. After an information was filed, it was "tried," *id.*, at *309, in the same way as an indictment: "The same notice was given, the same process was issued, the same pleas were allowed, the same trial by jury was had, the same judgment was given by the same judges, as if the prosecution had originally been by indictment," *id.*, at *310.

From the foregoing, the basic elements of a criminal "prosecution" emerge with reasonable clarity. "Prosecution," as Blackstone used the term, referred to "instituting a criminal suit," *id.*, at *309, by filing a formal charging document—an indictment, presentment, or information— upon which the defendant was to be tried in a court with power to punish the alleged offense. And, significantly, Blackstone's usage appears to have accorded with the ordinary meaning of the term. See 2 N. Webster, An American Dictionary of the English Language (1828) (defining "prosecution" as "[t]he institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment," and noting that "*[p]rosecutions* may be by presentment, information or indictment").

B

With Blackstone as our guide, it is significant that the Framers used the words "criminal prosecutions" in the Sixth Amendment rather than some other formulation such as "criminal proceedings" or "criminal cases." Indeed, elsewhere in the Bill of Rights we find just such an alternative formulation: In contrast to the Sixth Amendment, the Fifth Amendment refers to "criminal case[s]." U. S. Const., Amdt. 5 ("No person . . . shall be compelled in any criminal case to be a witness against himself").

In *Counselman* v. *Hitchcock*, 142 U. S. 547 (1892), the Court indicated that the difference in phraseology was not accidental. There the Court held that the Fifth Amendment right not to be compelled to be a witness against oneself "in any criminal case" could be invoked by a witness testifying before a grand jury. The Court rejected the argument that there could be no "criminal case" prior to indictment, reasoning that a "criminal case" under the Fifth Amendment is much broader than a "criminal prosecutio[n]" under the Sixth Amendment. *Id.*, at 563.

The following Term, the Court construed the phrase "criminal prosecution" in a statutory context, and this time the Court squarely held that a "prosecution" does not encompass preindictment stages of the criminal process. In *Virginia* v. *Paul*, 148 U. S. 107 (1893), the Court considered Revised Statute §643, which authorized removal to federal court of any "'criminal prosecution'" "'commenced in any court of a State'" against a federal officer. *Id.*, at 115. The respondent, a deputy marshal, had been arrested by Virginia authorities on a warrant for murder and was held in county jail awaiting his appearance before a justice of the peace "with a view to a commitment to await the action of the grand jury." *Id.*, at 118. He filed a petition for removal of "'said cause'" to federal court. *Ibid.* The question before the Court was whether a "'criminal prosecution'" had "'commenced'" within the meaning of

the statute at the time the respondent filed his removal petition.

The Court held that a criminal prosecution had not commenced, and that removal was therefore not authorized by the terms of the statute. The Court noted that under Virginia law murder could be prosecuted only "by indictment found in the county court," and that "a justice of the peace, upon a previous complaint, [could] do no more than to examine whether there [was] good cause for believing that the accused [was] guilty, and to commit him for trial before the court having jurisdiction of the offence." *Ibid.* Accordingly, where "no indictment was found, or other action taken, in the county court," there was as yet no "'criminal prosecution.'" *Id.*, at 119. The appearance before the justice of the peace did not qualify as a "prosecution":

> "Proceedings before a magistrate to commit a person to jail, or to hold him to bail, in order to secure his appearance to answer for a crime or offence which the magistrate has no jurisdiction himself to try, before the court in which he may be prosecuted and tried, are but preliminary to the prosecution, and are no more a commencement of the prosecution, than is an arrest by an officer without a warrant for a felony committed in his presence." *Ibid.*

C

The foregoing historical summary is strong evidence that the term "criminal prosecutio[n]" in the Sixth Amendment refers to the commencement of a criminal suit by filing formal charges in a court with jurisdiction to try and punish the defendant. And on this understanding of the Sixth Amendment, it is clear that petitioner's initial appearance before the magistrate did not commence a "criminal prosecutio[n]." No formal charges had been filed. The only document submitted to the magistrate was the arresting officer's affidavit of probable cause. The

officer stated that he "ha[d] good reason to believe" that petitioner was a felon and had been "walking around [an] RV park with a gun belt on, carrying a pistol, handcuffs, mace spray, extra bullets and a knife." App. to Pet. for Cert. 33a. The officer therefore "charge[d]" that petitioner had "commit[ted] the offense of unlawful possession of a firearm by a felon—3rd degree felony." *Ibid.* The magistrate certified that he had examined the affidavit and "determined that probable cause existed for the arrest of the individual accused therein." *Id.,* at 34a. Later that day, petitioner was released on bail, and did not hear from the State again until he was indicted six months later.

The affidavit of probable cause clearly was not the type of formal accusation Blackstone identified with the commencement of a criminal "prosecution." Rather, it was the preliminary accusation necessary to justify arrest and detention—stages of the criminal process that Blackstone placed before prosecution. The affidavit was not a pleading that instituted a criminal prosecution, such as an indictment, presentment, or information; and the magistrate to whom it was presented had no jurisdiction to try and convict petitioner for the felony offense charged therein. See *Teal* v. *State*, 230 S. W. 3d 172, 174 (Tex. Crim. App. 2007) ("The Texas Constitution requires that, unless waived by the defendant, the State must obtain a grand jury indictment in a felony case"); Tex. Crim. Proc. Code Ann., Arts. 4.05, 4.11(a) (West 2005). That is most assuredly why the magistrate informed petitioner that charges "*will be* filed" in district court. App. to Pet. for Cert. 35a (emphasis added).

The original meaning of the Sixth Amendment, then, cuts decisively against the Court's conclusion that petitioner's right to counsel attached at his initial appearance before the magistrate. But we are not writing on a blank slate: This Court has a substantial body of more recent precedent construing the Sixth Amendment right to coun-

sel.

## II

As the Court notes, our cases have "pegged commencement" of a criminal prosecution, *ante*, at 5, to "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment," *Kirby* v. *Illinois*, 406 U. S. 682, 689 (1972) (plurality opinion). The Court has repeated this formulation in virtually every right-to-counsel case decided since *Kirby*. Because *Kirby*'s formulation of the attachment test has been accorded such precedential significance, it is important to determine precisely what *Kirby* said:

> "In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell* v. *Alabama*, 287 U. S. 45 [(1932)], it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. See *Powell* v. *Alabama*, *supra; Johnson* v. *Zerbst*, 304 U. S. 458 [(1938)]; *Hamilton* v. *Alabama*, 368 U. S. 52 [(1961)]; *Gideon* v. *Wainwright*, 372 U. S. 335 [(1963)]; *White* v. *Maryland*, 373 U. S. 59 [(1963) *(per curiam)*]; *Massiah* v. *United States*, 377 U. S. 201 [(1964)]; *United States* v. *Wade*, 388 U. S. 218 [(1967)]; *Gilbert* v. *California*, 388 U. S. 263 [(1967)]; *Coleman* v. *Alabama*, 399 U. S. 1 [(1970)].

> "This is not to say that a defendant in a criminal case has a constitutional right to counsel only at the trial itself. The *Powell* case makes clear that the right attaches at the time of arraignment, and the Court has recently held that it exists also at the time of a preliminary hearing. *Coleman* v. *Alabama*, *supra.* But the point is that, while members of the Court

have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.*, at 688–689 (footnote omitted).

It is noteworthy that *Kirby* did not purport to announce anything new; rather, it simply catalogued what the Court had previously held. And the point of the plurality's discussion was that the criminal process contains stages *prior to* commencement of a criminal prosecution. The holding of the case was that the right to counsel did not apply at a station house lineup that took place "*before* the defendant had been indicted or otherwise formally charged with any criminal offense." *Id.*, at 684.

*Kirby* gave five examples of events that initiate "adversary judicial criminal proceedings": formal charge, preliminary hearing, indictment, information, and arraignment. None of these supports the result the Court reaches today. I will apply them *seriatim*. No indictment or information had been filed when petitioner appeared before the magistrate. Nor was there any other formal charge. Although the plurality in *Kirby* did not define "formal charge," there is no reason to believe it would have included an affidavit of probable cause in that category. None of the cases on which it relied stood for that proposition. Indeed, all of them—with the exception of *White* v. *Maryland*, 373 U. S. 59 (1963) *(per curiam)*, and *Coleman* v. *Alabama*, 399 U. S. 1 (1970)—involved postindictment proceedings. See *Powell* v. *Alabama*, 287 U. S. 45, 49 (1932) (postindictment arraignment); *Johnson* v. *Zerbst*, 304 U. S. 458, 460 (1938) (trial); *Hamilton* v. *Alabama*, 368 U. S. 52, 53, n. 3 (1961) (postindictment arraignment); *Gideon* v. *Wainwright*, 372 U. S. 335, 337 (1963) (trial);

*Massiah* v. *United States*, 377 U. S. 201 (1964) (postindictment interrogation); *United States* v. *Wade*, 388 U. S. 218, 219–220 (1967) (postindictment lineup); *Gilbert* v. *California*, 388 U. S. 263, 269 (1967) (postindictment lineup).

Nor was petitioner's initial appearance a preliminary hearing. The comparable proceeding in Texas is called an "examining trial." See *ante*, at 9, n. 12. More importantly, petitioner's initial appearance was unlike the preliminary hearings that were held to constitute "critical stages" in *White* and *Coleman*, because it did not involve entry of a plea, cf. *White*, *supra*, at 60, and was nonadversarial, cf. *Coleman*, *supra*, at 9. There was no prosecutor present, there were no witnesses to cross-examine, there was no case to discover, and the result of the proceeding was not to bind petitioner over to the grand jury or the trial court.

Finally, petitioner's initial appearance was not what *Kirby* described as an "arraignment." An arraignment, in its traditional and usual sense, is a postindictment proceeding at which the defendant enters a plea. See, *e.g.*, W. LaFave, J. Israel, & N. King, Criminal Procedure §1.3(n), p. 19 (4th ed. 2004); 4 Blackstone *322. Although the word "arraignment" is sometimes used to describe an initial appearance before a magistrate, see LaFave, *supra*, §1.3(j), at 16, that is not what *Kirby* meant when it said that the right to counsel attaches at an "arraignment." Rather, it meant the traditional, postindictment arraignment where the defendant enters a plea. This would be the most reasonable assumption even if there were nothing else to go on, since that is the primary meaning of the word, especially when used unmodified.

But there is no need to assume. *Kirby* purported to describe only what the Court had already held, and none of the cases *Kirby* cited involved an initial appearance. Only two of the cases involved arraignments, and both were postindictment arraignments at which the defendant

entered a plea. *Hamilton, supra*, at 53, n. 3; *Powell*, 287 U. S., at 49. And the considerations that drove the Court's analysis in those cases are not present here. See *id.,* at 57 (emphasizing that "from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important, the defendants did not have the aid of counsel"); *Hamilton, supra*, at 53–55 (emphasizing that the defendant entered a plea and was required to raise or waive certain defenses). *Kirby*'s inclusion of "arraignment" in the list of adversary judicial proceedings that trigger the right to counsel thus provides no support for the view that the right to counsel attaches at an initial appearance before a magistrate.

## III

It is clear that when *Kirby* was decided in 1972 there was no precedent in this Court for the conclusion that a criminal prosecution begins, and the right to counsel therefore attaches, at an initial appearance before a magistrate. The Court concludes, however, that two subsequent decisions—*Brewer* v. *Williams*, 430 U. S. 387 (1977), and *Michigan* v. *Jackson*, 475 U. S. 625 (1986)—stand for that proposition. Those decisions, which relied almost exclusively on *Kirby*, cannot bear the weight the Court puts on them.[1]

In *Brewer*, the defendant challenged his conviction for murdering a 10-year-old girl on the ground that his Sixth

---

[1] The Court also relies on *McNeil* v. *Wisconsin*, 501 U. S. 171 (1991), to support its assertion that the right to counsel attaches upon an initial appearance before a magistrate. *Ante*, at 10–11. But in *McNeil*, the Court expressed no view whatsoever on the attachment issue. Rather, it noted that the issue was "undisputed," and "accept[ed] for purposes of the present case, that . . . [the defendant's] Sixth Amendment right had attached." 501 U. S., at 175. We do not ordinarily give weight to assumptions made in prior cases about matters that were not in dispute.

Amendment right to counsel had been violated when detectives elicited incriminating statements from him while transporting him from Davenport, Iowa, where he had been arrested on a warrant for abduction and "arraigned before a judge . . . on the outstanding arrest warrant," to Des Moines, where he was to be tried. 430 U. S., at 390–391. The principal issue was whether the defendant had waived his right to have counsel present during police questioning when he voluntarily engaged one of the detectives in a "wide-ranging conversation." *Id.,* at 392. He subsequently agreed to lead the detectives to the girl's body in response to the so-called "'Christian burial speech,'" in which one of the detectives told the defendant that "'the parents of this little girl should be entitled to a Christian burial for the little girl who was snatched away from them on Christmas [E]ve and murdered.'" *Id.*, at 392–393. Not surprisingly, the parties vigorously disputed the waiver issue, and it sharply divided the Court.

In contrast, the question whether the defendant's right to counsel had attached was neither raised in the courts below nor disputed before this Court. Nonetheless, the Court, after quoting *Kirby*'s formulation of the test, offered its conclusory observations:

> "There can be no doubt in the present case that judicial proceedings had been initiated against Williams before the start of the automobile ride from Davenport to Des Moines. A warrant had been issued for his arrest, he had been arraigned on that warrant before a judge in a Davenport courtroom, and he had been committed by the court to confinement in jail. The State does not contend otherwise." 430 U. S., at 399.

*Brewer*'s cursory treatment of the attachment issue demonstrates precisely why, when "an issue [is] not addressed by the parties," it is "imprudent of us to address it . . . with any pretense of settling it for all time." *Metro-*

*politan Stevedore Co.* v. *Rambo*, 521 U. S. 121, 136 (1997). As an initial matter, the Court's discussion of the facts reveals little about what happened at the proceeding. There is no indication, for example, whether it was adversarial or whether the defendant was required to enter a plea or raise or waive any defenses—facts that earlier cases such as *Hamilton*, *White*, and *Coleman* had found significant.

Even assuming, however, that the arraignment in *Brewer* was functionally identical to the initial appearance here, *Brewer* offered no reasoning for its conclusion that the right to counsel attached at such a proceeding. One is left with the distinct impression that the Court simply saw the word "arraignment" in *Kirby*'s attachment test and concluded that the right must have attached because the defendant had been "arraigned." There is no indication that *Brewer* considered the difference between an arraignment on a warrant and an arraignment at which the defendant pleads to the indictment.

The Court finds it significant that *Brewer* expressed "'no doubt'" that the right had attached. *Ante*, at 19 (quoting 430 U. S., at 399). There was no need for a "lengthy disquisitio[n]," the Court says, because *Brewer* purportedly "found the attachment issue an easy one." *Ante*, at 18–19. What the Court neglects to mention is that *Brewer*'s attachment holding is indisputably no longer good law. That is because we have subsequently held that the Sixth Amendment right to counsel is "offense specific," meaning that it attaches only to those offenses for which the defendant has been formally charged, and not to "other offenses 'closely related factually' to the charged offense." *Texas* v. *Cobb*, 532 U. S. 162, 164 (2001). Because the defendant in *Brewer* had been arraigned only on the abduction warrant, there is no doubt that, under *Cobb*, his right to counsel had not yet attached with respect to the murder charges that were subsequently brought. See 532 U. S., at 184

(BREYER, J., dissenting) (noting that under the majority's rule, "[the defendant's] murder conviction should have remained undisturbed"). But the Court in *Cobb* did not consider itself bound by *Brewer*'s implicit holding on the attachment question. See 532 U. S., at 169 ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue"). And here, as in *Cobb*, *Brewer* did not address the fact that the arraignment on the warrant was not the same type of arraignment at which the right to counsel had previously been held to attach, and the parties did not argue the question. *Brewer* is thus entitled to no more precedential weight here than it was in *Cobb*.

Nor does *Jackson* control. In *Jackson*, as in *Brewer*, the attachment issue was secondary. The question presented was "not whether respondents had a right to counsel at their postarraignment, custodial interrogations," 475 U. S., at 629, but "whether respondents validly waived their right to counsel," *id.*, at 630. And, as in *Brewer*, the Court's waiver holding was vigorously disputed. See 475 U. S., at 637–642 (Rehnquist, J., dissenting); see also *Cobb, supra*, at 174–177 (KENNEDY, J., concurring) (questioning *Jackson*'s vitality). Unlike in *Brewer*, however, the attachment question was at least contested in *Jackson*— but barely. With respect to respondent Jackson, the State conceded the issue. *Jackson, supra*, at 629, n. 3. And with respect to respondent Bladel, the State had conceded the issue below, see *People* v. *Bladel*, 421 Mich. 39, 77, 365 N. W. 2d 56, 74 (1984) (Boyle, J., dissenting), and raised it for the first time before this Court, devoting only three pages of its brief to the question, see Brief for Petitioner in *Michigan* v. *Bladel*, O. T. 1985, No. 84–1539, pp. 24–26.

The Court disposed of the issue in a footnote. See *Jackson, supra*, at 629–630, n. 3. As in *Brewer*, the Court did not describe the nature of the proceeding. It stated only that the respondents were "arraigned." 475 U. S., at 627–

628. The Court phrased the question presented in terms of "arraignment," *id.*, at 626 ("The question presented by these two cases is whether the same rule applies to a defendant who has been formally charged with a crime and who has requested appointment of counsel at his arraignment"), and repeated the words "arraignment" or "postarraignment" no fewer than 35 times in the course of its opinion.

There is no way to know from the Court's opinion in *Jackson* whether the arraignment at issue there was the same type of arraignment at which the right to counsel had been held to attach in *Powell* and *Hamilton*. Only upon examination of the parties' briefs does it become clear that the proceeding was in fact an initial appearance. But *Jackson* did not even acknowledge, much less "flatly rejec[t] the distinction between initial arraignment and arraignment on the indictment." *Ante*, at 9. Instead, it offered one sentence of analysis—"In view of the clear language in our decisions about the significance of arraignment, the State's argument is untenable"—followed by a string citation to four cases, each of which quoted *Kirby*. 475 U. S., at 629–630, n. 3. For emphasis, the Court italicized the words "or arraignment" in *Kirby*'s attachment test. 475 U. S., at 629, n. 3 (internal quotation marks omitted).

The only rule that can be derived from the face of the opinion in *Jackson* is that if a proceeding is called an "arraignment," the right to counsel attaches.[2] That rule

---

[2] The Court asserts that *Jackson*'s "conclusion was driven by the same considerations the Court had endorsed in *Brewer*," namely, that "by the time a defendant is brought before a judicial officer, is informed of a formally lodged accusation, and has restrictions imposed on his liberty in aid of the prosecution, the State's relationship with the defendant has become solidly adversarial." *Ante*, at 9. But *Jackson* said nothing of the sort.

Moreover, even looking behind the opinion, *Jackson* does not sup-

would not govern this case because petitioner's initial appearance was not called an "arraignment" (the parties refer to it as a "magistration"). And that would, in any case, be a silly rule. The Sixth Amendment consequences of a proceeding should turn on the substance of what happens there, not on what the State chooses to call it. But the Court in *Jackson* did not focus on the substantive distinction between an initial arraignment and an arraignment on the indictment. Instead, the Court simply cited *Kirby* and left it at that. In these circumstances, I would recognize *Jackson* for what it was—a cursory treatment of an issue that was not the primary focus of the Court's opinion. Surely *Jackson*'s footnote must yield to our reasoned precedents.

And our reasoned precedents provide no support for the conclusion that the right to counsel attaches at an initial appearance before a magistrate. *Kirby* explained why the right attaches "after the initiation of adversary judicial criminal proceedings":

> "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our

---

port the result the Court reaches today. Respondent Bladel entered a "not guilty" plea at his arraignment, see Brief for Petitioner in *Michigan* v. *Bladel*, O. T. 1985, No. 84–1539, p. 4, and both *Hamilton* v. *Alabama*, 368 U. S. 52 (1961), and *White* v. *Maryland*, 373 U. S. 59 (1963) *(per curiam)*, had already held that a defendant has a right to counsel when he enters a plea. The Court suggests that this fact is irrelevant because the magistrate in Bladel's case "had no jurisdiction to accept a plea of guilty to a felony charge." *Ante*, at 10, n. 13. But that distinction does not appear in either *Hamilton* or *White*. See *Hamilton*, *supra*, at 55 ("Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently"); *White*, *supra*, at 60 ("[P]etitioner entered a plea before the magistrate and that plea was taken at a time when he had no counsel"). Thus, the most that *Jackson* can possibly be made to stand for is that the right to counsel attaches at an initial appearance where the defendant enters a plea. And that rule would not govern this case because petitioner did not enter a plea at his initial appearance.

whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." 406 U. S., at 689–690 (plurality opinion).

None of these defining characteristics of a "criminal prosecution" applies to petitioner's initial appearance before the magistrate. The initial appearance was not an "adversary" proceeding, and petitioner was not "faced with the prosecutorial forces of organized society." Instead, he stood in front of a "little glass window," filled out various forms, and was read his *Miranda* rights. Brief for Respondent 5. The State had not committed itself to prosecute—only a prosecutor may file felony charges in Texas, see Tex. Code Ann., Crim. Proc. Arts. 2.01, 2.02 (West 2005), and there is no evidence that any prosecutor was even aware of petitioner's arrest or appearance. The adverse positions of government and defendant had not yet solidified—the State's prosecutorial officers had not yet decided whether to press charges and, if so, which charges to press. And petitioner was not immersed in the intricacies of substantive and procedural criminal law— shortly after the proceeding he was free on bail, and no further proceedings occurred until six months later when he was indicted.

Moreover, the Court's holding that the right to counsel attaches at an initial appearance is untethered from any interest that we have heretofore associated with the right to counsel. The Court has repeatedly emphasized that

"[t]he purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights." *Johnson*, 304 U. S., at 465. The "core purpose" of the right, the Court has said, is to "assure 'Assistance' at trial, when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States* v. *Ash*, 413 U. S. 300, 309 (1973). The Court has extended the right to counsel to pretrial events only when the absence of counsel would derogate from the defendant's right to a fair trial. See, *e.g.*, *Wade*, 388 U. S., at 227.

Neither petitioner nor the Court identifies any way in which petitioner's ability to receive a fair trial was undermined by the absence of counsel during the period between his initial appearance and his indictment. Nothing during that period exposed petitioner to the risk that he would be convicted as the result of ignorance of his rights. Instead, the gravamen of petitioner's complaint is that if counsel had been appointed earlier, he would have been able to stave off indictment by convincing the prosecutor that petitioner was not guilty of the crime alleged. But the Sixth Amendment protects against the risk of erroneous *conviction*, not the risk of unwarranted *prosecution*. See *Gouveia*, 467 U. S., at 191 (rejecting the notion that the "purpose of the right to counsel is to provide a defendant with a preindictment private investigator").

Petitioner argues that the right to counsel is implicated here because restrictions were imposed on his liberty when he was required to post bail. But we have never suggested that the accused's right to the assistance of counsel "for his defence" entails a right to use counsel as a sword to contest pretrial detention. To the contrary, we have flatly rejected that notion, reasoning that a defendant's liberty interests are protected by other constitutional guarantees. See *id.*, at 190 ("While the right to

counsel exists to protect the accused during trial-type confrontations with the prosecutor, the speedy trial right exists primarily to protect an individual's liberty interest," including the interest in reducing the "'impairment of liberty imposed on an accused while released on bail'").

## IV

In sum, neither the original meaning of the Sixth Amendment right to counsel nor our precedents interpreting the scope of that right supports the Court's holding that the right attaches at an initial appearance before a magistrate. Because I would affirm the judgment below, I respectfully dissent.